558 P.2d 988

**Fred FICKETT and Robertson & Fickett, Petitioners,**

**v.**

**The SUPERIOR COURT OF the State of Arizona, PIMA COUNTY, Arizona, Robert O. Roylston, Judge of the Superior Court, Dean C. Christoffel, guardian of the Estate of Lillian E. Styer, an Incompetent, and Herbert J. Schwager, Respondents.**

**No. 2 CA–CIV 2346.**

Court of Appeals of Arizona,
Division 2.

Dec. 23, 1976.

Lesher, Kimble, Rucker & Lindamood, P. C. by William Kimble, Tucson, for petitioners and cross-respondents.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman, Tucson, for respondent and cross-petitioner Dean C. Christoffel, Guardian of the Estate of Lillian E. Styer, an Incompetent.

## OPINION

HOWARD, Chief Judge.

Petitioners are defendants in a pending superior court action filed by the present conservator (formerly guardian) of an incompetent's estate against the former guardian and petitioners, attorneys for the former guardian. The gravamen of the complaint was that petitioner Fickett, as attorney for the former guardian, was negligent in failing to discover that the guardian had embarked upon a scheme to liquidate the guardianship estate by misappropriation and conversion of the funds to his own use and making improper investments for his personal benefit.[1]

Petitioners filed a motion for summary judgment contending that, as a matter of law, since there was no fraud or collusion between the guardian and his attorney, the attorney was not liable for the guardian's misappropriation of the assets of the guardianship estate. In opposing the motion for summary judgment, the present conservator conceded that no fraud or collusion existed. His position, however, was that one could not say as a matter of law that the guardian's attorney owed no duty to the ward. The respondent court denied the motion for summary judgment and petitioners challenge this ruling by special action.

The general rule for many years has been that an attorney could not be liable to one other than his client in an action arising out of his professional duties, in the absence of fraud or collusion. 7 Am.Jur.2d, Attorneys at Law, § 167. In denying liability of the attorney to one not in privity of contract for the consequences of professional negligence, the courts have relied principally on two arguments: (1) That to allow such liability would deprive the parties to the contract of control of their own agreement; and (2) that a duty to the general public would impose a huge potential burden of liability on the contracting parties. An annotation of cases dealing with an attorney's liability to one other than his immediate client for the consequences of negligence in carrying out his professional duties may be found in Annot., 45 A.L.R.3d 1181 et seq.

■ We cannot agree with petitioners that they owed no duty to the ward and

---

1. The facts of the guardian's misconduct can be found in the case of *In Re Guardianship of Styer*, 24 Ariz.App. 148, 536 P.2d 717 (1975). There we affirmed a judgment surcharging the guardian in the sum of $378,789.62.

that her conservator could not maintain an action because of lack of privity of contract. We are of the opinion that the better view is that the determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958); *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961); *Heyer v. Flaig*, 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969); *Licata v. Spector*, 26 Conn. Sup. 378, 225 A.2d 28 (1966); *Donald v. Garry*, 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971).

We believe that the public policy of this state permits the imposition of a duty under the circumstances presented here. In the case of *In re Fraser*, 83 Wash.2d 884, 523 P.2d 921 (1974), the Supreme Court of Washington in considering a complaint concerning an attorney's refusal to withdraw as attorney for a client-guardian, stated:

"The respondent maintains and we agree that under the circumstances he would not have been justified in withdrawing as counsel until such time as the guardian had secured the agreement of some other attorney to take over the handling of the guardianship. As the respondent suggests, *the attorney owes a duty to the ward, as well as to the guardian.* Since the guardian in this case manifested a greater interest in obtaining money for herself than in serving the interest of the ward, it would have been hazardous to the interest of the ward to turn the assets of her small estate over to the guardian.

In *In re Michelson*, 8 Wash.2d 327, 335, 111 P.2d 1011, 1015 (1941), we said:

'It must be borne in mind that the real object and purpose of a guardianship is to preserve and conserve the ward's property for his own use, as distinguished from the benefit of others.'

We think that under the circumstances of this case, the respondent cannot be faulted for refusing to abandon the ward at the guardian's request." 523 P.2d at 928. (Emphasis ours)

■■■ We are of the opinion that when an attorney undertakes to represent the guardian of an incompetent, he assumes a relationship not only with the guardian but also with the ward. If, as is contended here, petitioners knew or should have known that the guardian was acting adversely to his ward's interests, the possibility of frustrating the whole purpose of the guardianship became foreseeable as did the possibility of injury to the ward. In fact, we conceive that the ward's interests overshadow those of the guardian. We believe the following statement in *Heyer v. Flaig*, supra, as to an attorney's duty to an intended testamentary beneficiary is equally appropriate here:

"The duty thus recognized in *Lucas* stems from the attorney's undertaking to perform legal services for the client but reaches out to protect the intended beneficiary. We impose this duty because of the relationship between the attorney and the intended beneficiary; public policy requires that the attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons whose rights and interests are certain and foreseeable.

Although the duty accrues directly in favor of the intended testamentary beneficiary, the scope of the duty is determined by reference to the attorney-client context. Out of the agreement to provide legal services to a client, the prospective testator, arises the duty to act with due care as to the interests of the intended beneficiary. We do not mean to say that the attorney-client contract for legal services serves as the fundamental touchstone to fix the scope of this direct tort

duty to the third party. The actual circumstances under which the attorney undertakes to perform his legal services, however, will bear on a judicial assessment of the care with which he performs his services." 74 Cal.Rptr. at 229, 449 P.2d at 165.

We, therefore, uphold the respondent court's denial of petitioners' motion for summary judgment since they failed to establish the absence of a legal relationship and concomitant duty to the ward.

A cross-petition for special action has been filed by the respondent conservator, plaintiff in the pending action against petitioners. A request for admissions pursuant to Rule 36, Rules of Civil Procedure, was served upon petitioners including, inter alia, certain matters with respect to a report prepared by Mr. Seby, a certified public accountant, at the direction of the probate court and concerning the guardianship estate. As we noted in our decision in the case of *In re Guardianship of Styer*, supra, wherein we reviewed the surcharge judgment against the former guardian, Mr. Seby took testimony of various witnesses and filed a four-volume report. The thrust of the request for admissions was that petitioners admit that the Seby report was correct as to its summary of the guardian's transactions, the itemization thereof, the amount of funds and assets converted by the guardian, the amount of funds wrongfully expended, the amount of funds and property misappropriated and embezzled by the guardian, and the amount of funds and property for which the guardian had failed to account.

In response to the subject seven requests for admissions, petitioners stated:

"These defendants are unable either to admit or deny that said report constitutes an accurate summary of the transactions engaged in by Mr. Schwager during his administration as Guardian or that such report correctly summarizes the reports and expenditures made by Mr. Schwager in connection with the administration of said estate. Mr. Schwager did many things in the administration of this Estate that were unknown to these defendants, and therefore, although they have made reasonable inquiry the information known or readily obtainable to them is insufficient to enable them to either admit or deny this Request."

A "Motion for Order Requiring Admissions of Fact" was filed by the plaintiff-conservator and the denial of this motion is the subject of this cross-petition for special action.

Rule 36(a), Rules of Civil Procedure, provides in pertinent part:

"An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny."

As pointed out in the State Bar Committee note to Rule 36(a), this portion of the Rule, as amended in 1970, adopts the majority view that a party may not base his answer on lack of information or knowledge without seeking out additional information. The Note states:

"The 1970 revision adopts the majority view, as in keeping with a basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process. The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him."

See also 8 Federal Practice and Procedure, Wright & Miller, § 2261.

We are of the opinion that in keeping with the spirit of this rule, it is not sufficient that a party merely respond in the language of the rule, i. e., that he has made reasonable inquiry, and thereby insulate himself from sanctions of the Rule. We believe that when the party who has requested the admissions challenges the sufficiency of the answers, as was done

here, the opposing party then has a duty to come forward with some facts to support his claim of "reasonable inquiry." In other words, he should be required to show what investigation he has undertaken in an attempt to respond to the request for admissions. The spirit of Rule 36 requires a litigant to ascertain the truth, and petitioners should have filed a statement setting forth in detail why they could not truthfully admit or deny without taking on a costly and unreasonable burden and filed an objection. *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company*, 490 S.W.2d 818 (Tex.1972). That a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease of the trial process has been recognized by the Report of the Advisory Committee on Rules. 48 F.R.D. 487, 533 (1970). See also *Lumpkin v. Meskill*, 64 F.R.D. 673 (D.Conn.1974).

There being no abuse of discretion or excess of jurisdiction in the denial of petitioners' motion for summary judgment, the relief prayed for is denied. The order of the respondent court denying the "Motion for Order Requiring Admission of Fact" is therefore vacated with directions to proceed in conformity herewith.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: JACK G. MARKS was called to sit and participate in the determination of this decision by order of the Chief Justice, Arizona Supreme Court.