HARBOR MECHANICAL, INC., a Washington Corporation, Plaintiff,

v.

ARIZONA ELECTRIC POWER COOPERATIVE, INC., an Arizona Corporation; Burns & McDonnell Engineering Company, a Missouri Corporation; and National Valve and Manufacturing Company (Basic Engineers Division), a Delaware Corporation, Defendants.

SCHUCHART INDUSTRIAL CONTRACTORS, INC., a Washington Corporation, Plaintiff,

v.

ARIZONA ELECTRIC POWER COOPERATIVE, INC., an Arizona Corporation; and Burns & McDonnell Engineering Company, a Missouri Corporation, Defendants.

Nos. CIV 80–027, CIV 80–028–TUC–MAR.

United States District Court,
D. Arizona.

Aug. 15, 1980.

682

Warren E. Platt, Daniel J. McAuliffe, James R. Condo, Snell & Wilmer, Phoenix, Ariz., and Carroll L. Bryan, II, Taylor & Ulin, P.S., Seattle, Wash., for plaintiff.

Robert R. Mills, Jerry C. Bonnett and Andrew S. Friedman, Evans, Kitchel & Jenckes, P.C., Phoenix, Ariz., for Burns & McDonnell Engineering Co.

Russell E. Jones, Tucson, Ariz., for Arizona Elec.

MARY ANNE RICHEY, District Judge.

This case arises out of the construction of the Apache Electric Generating Station owned by defendant Arizona Electric Power Cooperative, Inc. (AEPCO). AEPCO hired defendant Burns and McDonnell (B&McD), an engineering firm, to prepare plans and specifications for construction of the plant and to supervise the various contractors at the construction site. Plaintiffs Harbor Mechanical (Harbor) and Schuchart Industrial Contractors (Schuchart) were hired by AEPCO to perform certain phases of the construction. Other phases of the construction were the responsibility of other prime contractors, not parties to this suit.

The construction of the power plant was plagued with delays and lack of coordination among the various prime contractors. As a result, Harbor and Schuchart allegedly incurred substantial additional costs and have brought this action against the defendants to recover the amount of that loss. Each plaintiff filed a separate suit, but the defendants, the factual allegations, and legal claims are similar, with the exception that Harbor's complaint contains a claim against B&McD for negligent misrepresentation which the Schuchart complaint omits. Both complaints contain a negligence count against M&McD, Count V.

B&McD has moved for dismissal of Count V from both complaints and for dismissal of the misrepresentation claim in Harbor's complaint. The Court will treat this motion as one for summary judgment under Rule 12(b), Fed.R.Civ.P., the parties having submitted affidavits and other materials outside the pleadings. As counsel for both parties agreed at the hearing on this motion, under the *Erie* doctrine the Court is bound to apply state law in this diversity action. See *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346–47 (9th Cir. 1974).

I. *The Negligence Claim*

The gist of Count V of both complaints is that B&McD was negligent in its drafting of plans and specifications and was further negligent in supervision of the construction, with the result that plaintiffs suffered loss due to increased costs of construction. Plaintiffs further allege that this negligent supervision by B&McD breached a duty of due care owed to the prime contractors. Defendant argues that there existed no duty on its part to plaintiffs, since there was no contract between them, so that the only party who could recover for B&McD's alleged negligence would be AEPCO. The issue, then, is whether Arizona recognizes a contractor's cause of action for negligence against an architect/engineer in the absence of any contractual relationship.

In Arizona, as elsewhere, before a party can be held liable for negligence he must have owed a duty to the plaintiff, the breach of which results in injury. *Berne v. Greyhound Parks of Arizona, Inc.*, 104 Ariz. 38, 448 P.2d 388, 389 (1968). For plaintiffs to recover from B&McD, they must demonstrate that B&McD owed them a duty to design the power plant and supervise its construction in a professionally competent manner. In their complaints and memoranda on this motion, plaintiffs contend that this duty arose from the contract between AEPCO and B&McD, the contract between AEPCO and the plaintiffs, and a B&McD procedures manual.

None of these documents expressly imposes duties upon B&McD toward the

plaintiffs. Plaintiffs contend, however, that the duties are implied in the grant of extensive powers and responsibilities from AEPCO to B&McD. With this background, the Court now turns to the scant Arizona law on the issue.

The first Arizona case to discuss the issue of engineer liability to third parties was *Blecick v. School Dist. No. 18*, 2 Ariz.App. 115, 406 P.2d 750 (1965), which involved a general contractor's claim that an architect's defective plans and negligent supervision resulted in the contractor incurring economic loss. The Arizona Court of Appeals squarely held that since there was no privity of contract between the architect and the contractor, the architect's duties were owed solely to the school district and only the school district could recover for any negligence on the part of the architect. 406 P.2d at 755.

Plaintiffs attempt to distinguish *Blecick* as a case involving a contract dispute, whereas they characterize their claim against B&McD as sounding in negligence. This distinction is invalid, however, because plaintiffs' Count V substantially premises the defendant's alleged duty to plaintiffs on the contract between B&McD and AEPCO. *Blecick* clearly holds that a contract between an architect and a property owner does not create duties owed to third party contractors. If *Blecick* remains good law, therefore, summary judgment must be granted to B&McD on the negligence count.

Plaintiffs attempt to avoid this conclusion by arguing that *Blecick* was "implicitly overruled" in *Reber v. Chandler H.S. Dist. # 202*, 13 Ariz.App. 133, 474 P.2d 852 (1970). In *Reber*, a school district contracted with an architect to draw plans for a school building and to supervise the construction. Employees of the general contractor, injured due to an unsafe method of construction, sued the school district and the architect, the claim against the architect being based on "negligent supervision." Instead of simply holding that the architect

could not be sued by the employees of the general contractor due to lack of privity of contract, the *Reber* court stated that an architect might be liable to injured employees of the contractor in some cases. 474 P.2d at 854. The important aspect of *Reber* from Harbor and Schuchart's point of view is that it contemplated imposing liability to parties other than the owner who engaged the architect. This result, plaintiffs argue, implicitly overrules *Blecick*. This Court does not agree.

*Blecick* held that a contractor who was not a party to the contract between an architect and the owner, or was not an intended beneficiary of that contract, could not hold the architect liable for negligence. 406 P.2d at 755. *Reber* is not inconsistent with that proposition.[1] *Reber* did not impose upon architects a general duty to third parties, based upon the architect's supervision responsibilities. Instead, the court said that an architect may owe a duty to a third party, depending upon "whether or not *the contract documents* have created a duty." 474 P.2d at 854 (emphasis added). In short, the court considered the intent of the parties, as reflected in the contract language, controlling on the scope of the architect's duty to third parties.

This interpretation of *Reber* is supported by further language in the opinion. Still discussing the scope of the architect's duty, the court disapproved of cases from other jurisdictions that imposed liability without finding a contractual duty:

> these cases have disregarded fundamental contractual principles in attempting to parlay general inspection or supervision clauses which give the owner or architect a *right* to stop observed unsafe construction processes into a *duty* which is neither consistent with generally accepted usage nor contemplated by the contract or the parties.

474 P.2d at 854–55 (emphasis in original).

Finally, *Reber* cited the dissenting opinion in *Miller v. DeWitt*, 37 Ill.2d 273, 226

---

1. The defendant attempts to distinguish *Blecick* from *Reber* on the basis of the type of injury suffered by the plaintiff. Since the Court finds the two cases to be consistent in principle, it does not reach the validity of the proposed personal injury–economic loss distinction.

N.E.2d 630 (1967) (House, J., dissenting) as a "concise, well reasoned statement of the controlling legal principles." 474 P.2d at 855. The dissent in *Miller* would have strictly limited the architect's duties to those contemplated by the contract. See 226 N.E.2d at 643. Thus, both *Blecick* and *Reber* would confine the duties imposed upon an architect to those contemplated by the contract.

This reconciliation of the two cases is supported by the *Reber* court's discussion of *Blecick*, set out in the following language:

the defendant architect, citing *Blecick v. School District No. 18* . . . contends that the extent of his duties must be determined solely from the provisions of his contract with the owner, and that since he was not a party to the contract between the owner and the general contractor, the provisions of that contract relating to the architect's supervision duties have no relevance. *As a general proposition, we would be inclined to agree that the contractual obligations of a party must be measured by the provisions of that party's contract* and that such obligations could not be enlarged by a separate independent contract without that party's consent.

474 P.2d at 855 (citation omitted, emphasis added).

Based on its reading of the above Arizona cases, the Court must conclude that B&McD owed no duty to plaintiffs unless they were parties to the contract between AEPCO and B&McD or intended beneficiaries of that contract. *Blecick*, 406 P.2d at 755. There is no question that plaintiffs were not parties to the AEPCO–B&McD contract. Plaintiffs must, therefore, point to some language in the contract that expresses an intent that B&McD's duties were to benefit the prime contractors, as well as the owner.

Article III of the contract between AEPCO and B&McD sets out the supervisory duties of the engineering firm. Section 1 of that Article contains language which considered alone might make the issue of whether duties were owed the contractor a close question. The concluding sentence of that section, however, specifically states that the engineer's obligations "run to and are for the benefit of only the Owner and the Administrator [REA]." This is a clear and direct expression of intent that the contract duties of B&McD were to run only to AEPCO and the REA, who is not a party to this suit. As a result, this Court could only impose upon B&McD liability to the plaintiffs for negligence if it found a duty to the plaintiffs somewhere outside the AEPCO–B&McD contract. Both *Reber* and *Blecick* prohibit such an exercise.

Plaintiffs have argued that the contract provision just cited should not be given effect, citing the principle that a party cannot legally contract away liability for negligence to third parties. While that is a correct statement of the law, it has no application to this case. The contract provision in question is not an attempt to avoid liability for duties breached, but rather places a limit on the duties imposed. Plaintiffs cite no cases holding such a limitation of duty invalid, and the dissent in *Miller*, cited with approval by the Arizona Court of Appeals, lists as one reason for its conclusion a contract provision between the parties that limited the architect's duty. See 226 N.E.2d at 643. Moreover, the Court can conceive of no public policy reason for invalidating such a provision, given the commercial nature of the transaction and the parties' equal bargaining power.[2]

In addition to the AEPCO–B&McD contract, the plaintiffs allege that defendant's

---

2. The parties were given the opportunity of filing supplemental memoranda upon the significance of two Arizona cases involving attorneys' liability to third parties. See *Chalpin v. Brennan*, 114 Ariz. 124, 559 P.2d 680 (Ct.App. 1976); *Fickett v. Superior Court*, 27 Ariz.App. 793, 558 P.2d 988 (1976). *Chalpin* squarely held that there could be no liability to parties outside privity of contract, 559 P.2d at 682, and

so supports defendant's position. *Fickett*, while imposing liability to one other than the attorney's immediate client, involved the special relationship between attorney, ward, and guardian, and noted that the purpose of the attorney-client relationship was to protect the third party-the ward. 558 P.2d at 990. That type of relationship is absent from the commercial transaction at issue in this case.

duty to them is based in the contract between AEPCO and the prime contractors and in a B&McD procedures manual. The Court finds no support for this contention.

There is no reason to bind B&McD by the terms of a contract entered into between two other parties. While *Reber* did imply that the owner–contractor contract may be relevant in assessing the scope of the architect's duties when the architect drafted that document, Judge Haire limited that possibility to those cases where the owner–architect contract is ambiguous regarding the scope of the architect's duties. 474 P.2d at 855. As discussed above, the Court finds no such ambiguity in the AEPCO–B&McD contract. As to the procedures manual, plaintiffs can point to no evidence in the already extensive record that even suggests the B&McD manual was intended to be a binding contract between the owner and the engineer; nor do plaintiffs contradict defendant's assertion that AEPCO's engineering manager had never even seen the manual prior to his deposition in June of this year.

The Court concludes, in accordance with the "general proposition" announced in *Reber*, that B&McD's contractual obligations must be measured by the provisions of the AEPCO–B&McD contract. See 474 P.2d at 855. Since that contract explicitly restricts the scope of B&McD's duties to those owed to AEPCO and the REA, the Court finds that the contract gave rise to no duties owed by defendants to plaintiffs. Consequently, the defendant's alleged negligent performance of that contract does not provide the plaintiffs a cause of action for negligence under Arizona law.

Having reached this conclusion, the Court does not feel compelled to discuss at length the other grounds urged by the defendant in regard to Count V. The agency argument is dependent upon whether a duty was owed to third parties and so now is moot. As to the third contention, the Court finds that even if there is currently a federal policy against holding architect/engineers liable to third parties, such a policy was not in existence at the time this contract was entered into. See Supplement to REA Bulletin 41–1, dated September 6, 1978, paragraphs II and III.

## II. *The Negligent Misrepresentation Claim*

In Count VII of its complaint, Harbor alleges that B&McD made negligent misrepresentations that AEPCO would not require Harbor to comply with certain contract requirements. Harbor apparently did not comply, allegedly in reliance upon these representations, and now alleges that AEPCO has refused to make certain payments on the basis of this non–compliance. B&McD moves for summary judgment as to this claim on several grounds. Arizona does recognize a cause of action for negligent misrepresentation, see *Van Buren v. Pima Community College Dist. Bd.*, 113 Ariz. 85, 546 P.2d 821 (1976); *Arizona Title Insurance & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971), so summary judgment in favor of defendant is justified only if there are no contested issues of material fact regarding the representations.

B&McD first argues that this claim is fatally inconsistent since plaintiff alleges in a different count of the complaint that AEPCO did make statements waiving certain contract requirements. The Court views this "inconsistency" as merely pleading in the alternative, specifically sanctioned by Rule 8(e)(2), Fed.R.Civ.P. While the case cited by B&McD, *Friendship Medical Center, Ltd. v. Space Rentals*, 62 F.R.D. 106 (N.D.Ill.1964), did dismiss several counts of a complaint because they were inconsistent, such a result is not supported by the weight of authority, see 5 Wright & Miller, *Federal Practice and Procedure*, § 1283, at 371–75, and this Court declines to follow it.

B&McD next argues that Harbor was not justified in relying on any representations made by B&McD because Harbor had "equal access" to AEPCO. Harbor makes counter allegations concerning access to AEPCO. This issue is one of those contested factual questions which can only be resolved by a trial on the merits.

Finally, B&McD contends that Harbor could not justifiably rely on any B&McD statements concerning waiver of contract requirements. This contention is based on the theory that the contract between AEPCO and Harbor required any modifications be in writing, so Harbor should have known that oral modifications communicated by B&McD were legally insufficient. That theory is not the law in Arizona. In *Eng v. Stein*, 123 Ariz. 343, 599 P.2d 796, 799 (1979), the Arizona Supreme Court held that the parties can orally modify a written contract, even though the written contract by its terms requires any changes to be in writing. Therefore, because there are material issues of fact yet to be resolved, the defendant is not entitled to summary judgment as to Count VII.

IT IS THEREFORE ORDERED that defendant Burns & McDonnell's motion to dismiss Count V in CIV 80–027–TUC–MAR and CIV 80–028–TUC–MAR [treated by the Court as motions for summary judgment under Rule 12(b)] is granted.

IT IS FURTHER ORDERED that defendant Burns & McDonnell's motion to dismiss Count VII in CIV 80–027–TUC–MAR is denied.