675 P.2d 1327

TRAVELERS INSURANCE COMPANY,
a foreign corporation,
Plaintiff-Appellant,

v.

Earl E. BREESE and Shirley A. Breese,
husband and wife,
Defendants-Appellees,

Paul Broadwell, P.C., an Arizona corporation; Paul Broadwell and Helen Broadwell, husband and wife, Third-Party Defendants-Appellees.

No. 1 CA–CIV 5425.

Court of Appeals of Arizona,
Division 1, Department D.

June 28, 1983.

Rehearing Denied Aug. 30, 1983.

Review Denied Oct. 25, 1983.

Law Office of John F. Day by John F. Day, Phoenix, for plaintiff-appellant.

James Evans Thompson, Phoenix, for defendants-appellees.

Fennemore, Craig, von Ammon, Udall & Powers, P.A. by Jerome B. Shultz and George T. Cole, Phoenix, for third-party defendants-appellees.

## OPINION

EUBANK, Judge.

This is an appeal from summary judgment in favor of Earl and Shirley Breese (Breeses or Earl Breese) against Travelers

Insurance Company (Travelers), which denied Travelers' attempt to impose a lien, pursuant to A.R.S. § 23–1023(C), against a sum of money collected by the Breeses from their former attorney, Paul Broadwell (Broadwell), in a legal malpractice third-party action.

The facts relevant to this appeal are not in dispute. Earl Breese was an employee of Drivers Service, Inc., an Arizona corporation. On December 27, 1974, while engaged in the scope of his employment in California, Earl Breese's vehicle was struck from behind by a truck owned by Union Oil Company of California (Union Oil), which was operated by one of its employees. Earl Breese sustained injuries resulting from that accident for which he applied and received $20,531.77 in benefits from Travelers, his employer's workmen's compensation insurance carrier.

As part of Travelers' benefits paid to Earl Breese, he was required to sign an "Election of Remedies" agreement in which Earl Breese chose Remedy Number Two. The agreement reads:

KNOW ALL MEN BY THESE PRESENTS:

That I claim to be entitled to benefits under the Workmen's Compensation Act of Arizona for an injury by accident arising out of an in the course of my employment by reason of the negligence or wrong of a person or persons not in the same employ as myself.

I understand that there are two Remedies available to me, as provided by ARS 23 1023:

### REMEDY No. 1

I elect to accept compensation and/or accident benefits (medical expenses) as provided by the Workmen's Compensation Law of Arizona. I am advised that under this election I assign to the State of Arizona for the benefit of the State Compensation Fund, or to the person liable for the payment of my benefits, all claims or causes of action whatsoever against the third party or parties responsible for my injuries.

### REMEDY No. 2

I elect to accept compensation and/or accident benefits (medical expenses) as provided by the Workmen's Compensation Law of Arizona. Further, I elect to proceed diligently against the third party or parties responsible for my injuries. However, I understand that the party paying the compensation and accident benefits shall have a lien on the amount actually collectible from the third party to the extent of the benefits paid, less the expenses of recovery permitted by statute. I further understand that if the amount actually collectible from the third party is less than the benefits to which I am entitled under the Workmen's Compensation Law, then the party liable to pay the compensation and accident benefits shall pay only the difference between the sum of money I actually collect from the third party and the total benefits to which I am entitled under the Workmen's Compensation Law.

I further understand that under the law I may not compromise or settle this claim without written approval of the commission.

In accordance with his election to proceed against third parties "responsible for [his] injuries," Earl Breese hired Broadwell to pursue his claim against Union Oil. Broadwell failed to file an action in California against Union Oil before California's one-year statute of limitations had run, thus barring the Breeses' potential recovery in California. *See* Cal.Civil Procedure Code § 340(3) (West 1982). After discovering that the Breeses' attorney had allowed the statute of limitations to run, Travelers brought this action in Maricopa County Superior Court against the Breeses. Travelers' complaint alleges that "[p]ursuant to the [Election of Remedies] agreement and A.R.S. § 23–1023, Travelers acquired a lien for the amount of benefits paid, against any monies [the Breeses] might recover in an action against the responsible third parties." Since any purported recovery

against such third parties was allegedly lost when the California statute of limitations expired, Travelers sought to be reimbursed for the benefits it had paid and will continue to pay for Earl Breese's injuries.

The Breeses answered Travelers' complaint and, additionally, filed a third-party complaint against Broadwell sounding in the tort of legal malpractice and breach of contract. On September 14, 1979, Travelers filed a motion for summary judgment in which it claimed a lien upon any amounts the Breeses might recover from Broadwell, under the theory of equitable subrogation. Travelers' contention focused upon Arizona's public policy against allowing a workmen's compensation recipient to receive a double recovery for his injuries.

The Breeses responded to Travelers' motion contending that the Election of Remedies agreement was unenforceable for lack of consideration, and that A.R.S. § 23–1023 precludes a lien upon amounts recovered by the Breeses from Broadwell. Prior to argument upon either motion for summary judgment, however, Broadwell and the Breeses, without notice to Travelers, settled the third-party claim on December 5, 1979, and the trial court ordered the third-party action dismissed on December 6, 1979.

The day before the settlement was filed, Travelers filed a motion to intervene in the third party action as an additional plaintiff. On December 26, 1979, it also filed a motion for relief from the December 6th order and a motion to join Broadwell as an additional party defendant to the original action. All pending motions were heard on January 24, 1980, and the trial court granted the Breeses' motion for summary judgment and denied all of Travelers' motions by formal written order on March 18, 1980. This appeal by Travelers followed.

## THE BREESE ACTION

Travelers initially raised in its complaint the allegation that an "Election of Remedies" agreement had been executed between Travelers and the Breeses "to proceed diligently against the third party or parties responsible for [Earl Breese's] injuries." Travelers alleges that the Breeses' failure to pursue their cause of action against Union Oil breached the agreement, causing Travelers harm to the extent of the benefits they have paid to Earl Breese. The agreement appears to be an attempt to incorporate the provisions of A.R.S. § 23–1023, which were in effect at the time of the agreement, in a written document.[1] Section 23–1023, however, does not *require* the electing party to diligently pursue his remedies against the responsible third par-

---

1. A.R.S. § 23–1023, in effect at the time the agreement was signed states:

   A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death of his dependents, may pursue his remedy against such other person.

   B. If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such other person by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the insurance carrier, or to the person liable for the payment thereof. Such a claim so assigned may be prosecuted or compromised by the insurance carrier or the person liable for the payment thereof.

   C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectible from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectible shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim.

ty. Rather, the statute gives the employee an exclusive right to pursue his remedies against the responsible third parties for one year, after which time the right is automatically assigned "to the insurance carrier, or to the person liable for the payment" of benefits. A.R.S. § 23–1023(B). Thus, since § 23–1023 does not compel the employee to pursue his remedies, Travelers relies upon the "diligence" language found in the agreement signed by Earl Breese.

The Breeses, however, contend that the "Election of Remedies" agreement is invalid for lack of consideration. We agree. A promise lacks consideration if the promisee is under a preexisting duty to counter-perform. *Leone v. Precision Plumbing and Heating of Southern Arizona, Inc.*, 121 Ariz. 514, 515, 591 P.2d 1002, 1003 (App.1979); 1 A. Corbin on Contracts, Sec. 171 (1963). *See J.D. Halstead Lumber Co. v. Hartford Accident & Indemnity Co.*, 38 Ariz. 228, 298 P. 925 (1931). The facts *sub judice* establish no evidence of forbearance or detriment on the part of the promisee (Travelers), other than to do what it was already required to do under A.R.S. § 23–1023.

Travelers asserts that in exchange for Earl Breese's promise to pursue his remedies against Union Oil, Travelers agreed to refrain from suing Union Oil during the first year after the accident. The record does not support this assertion. First, the agreement contains no language requiring appellant to forego any rights it might have had to sue Union Oil. Indeed, it sets forth no duties, responsibilities or undertakings by Travelers. Any restraints imposed upon Travelers by A.R.S. § 23–1023 regarding its right to sue third parties do not qualify as consideration for Earl Breese's promise. *Leone v. Precision Plumbing and Heating of Southern Arizona, Inc., supra. Cf. Gill v. Kreutzberg*, 24 Ariz.App. 207, 537 P.2d 44 (1975) (agreement held to be valid where it explicitly

promised abatement and dismissal of suit where there was no prior underlying duty to abate and dismiss). Second, it is uncontroverted that during the one-year period, Travelers refused Broadwell's offer of assistance and informed him that they would pursue their own remedies against Union Oil. Finally, the heading and prefatory language of the "Election of Remedies" agreement[2] strongly suggests that the "agreement" does not purport to bind the employee to any greater duty or different election than those provided for in A.R.S. § 23–1023. Consequently, the "diligence" language is merely precatory.

Since the Breeses did not have a contractual duty to file an action against Union Oil, we must then turn to the statutory language of A.R.S. § 23–1023. As we noted before, this section creates a bifurcated right of action against third party tortfeasors in workmen's compensation cases. If the injured employee elects to take his workmen's compensation benefits and sue the third party tortfeasor, he maintains this right for the first year after the action accrues. The employee's right to sue third parties, however, is not mandatory. Thereafter, the right is automatically assigned to his employer or the insurance carrier. A.R.S. § 23–1023(B); *K.W. Dart Truck Co. v. Noble*, 116 Ariz. 9, 11, 567 P.2d 325, 327 (1977). If the employee chooses to proceed against such third parties, the employer or insurance carrier has a lien upon any amounts received from such third parties to the extent of the benefits the employer or carrier is required to pay, and these lien rights are treated as if they were subrogated rights. A.R.S. § 23–1023(C); *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982). *See Liberty Mutual Insurance Co. v. Western Casualty and Surety Co.*, 111 Ariz. 259, 527 P.2d 1091 (1974).

Travelers contends that this statutory lien right extends to amounts of money

---

**2.** The agreement is headed by the following title in bold type:

INDUSTRIAL COMMISSION OF ARIZONA
1010 West Adams    Phoenix, Arizona 85007

Just above the two available remedies appears this introduction:

"I understand that there are two Remedies available to me, as provided by A.R.S. 23 1023:"

collected by the Breeses from Broadwell, which but for the attorney's negligence, would have come from the third-party tortfeasor Union Oil. Travelers overlooks, however, the plain meaning of the language found in A.R.S. § 23–1023 defining the extent of the lien created by the statute. To reiterate, Subsection (A) of the statute states:

> A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong *of another* not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against *such other person.* (emphasis added).

The remaining two subsections of the statute each refer to "such other person" as the party against whom the employee has a third-party tort action. Most importantly, any lien which the insurance carrier has is against "the amount actually collectible from *such other person* to the extent of such compensation and medical, surgical and hospital benefits paid." (emphasis added). A.R.S. § 23–1023(C). The unequivocal language of this provision only gives Travelers a lien upon amounts actually collected from Union Oil, the party defined in § 23–1023(A), while no lien expressly arises from the statute on amounts collected from Broadwell, a person not responsible for any of Earl Breese's injuries.

Appellant apparently concedes these statutory limitations in its position on appeal, but attempts to overcome these shortcomings by arguing that contrary to public policy, the Breeses will receive a double recovery for Earl Breese's injury. We are well aware of the general policy precluding an employee from recovering both insurance benefits and damages from third-party tortfeasors. *See* 2A Larson's *Workmen's Compensation Law* § 71.20. Clearly, § 23–1023 is an attempt by the legislature to prevent such double recovery. However, this court has previously decided in several cases that the language of § 23–1023 will not be ignored for the sake of avoiding an alleged double recovery. *See Sunstate Equipment Corp. v. Indus-*

*trial Commission of Arizona,* 135 Ariz. 477, 662 P.2d 152 (App.1983); *State Farm Mutual Auto Insurance Co. v. Karasek,* 22 Ariz.App. 87, 523 P.2d 1324 (1974); *see also Allied Mutual Insurance Co. v. Larriva,* 19 Ariz.App. 385, 507 P.2d 997 (1973).

In *Sunstate Equipment Corp. v. Industrial Commission, supra,* decided after the briefs were filed in the instant case, a workmen's compensation insurance carrier had paid an injured employee $1,130.30 for injuries he sustained in an automobile accident while in the course and scope of his employment. The employee also received $5000 from his employer's automobile insurance carrier for uninsured motorist coverage. The workmen's compensation carrier attempted to enforce a lien upon the uninsured motorist insurance recovery pursuant to A.R.S. § 23–1023. It argued to this court that a double recovery would result if the employee were allowed to keep both insurance benefits. We rejected the insurance carrier's arguments, holding that in light of the "clear and unambiguous language" of A.R.S. § 23–1023(C), "whether the employee receives a 'double recovery' is legally immaterial." 662 P.2d at 154–55. *Sunstate* distinguishes our earlier opinions in *State Farm Mutual Auto Insurance Co. v. Karasek, supra,* and *Allied Mutual Insurance Co. v. Larriva, supra,* where the uninsured motorist coverage in question had been purchased by the injured employee. In *Sunstate,* the employee had nothing to do with procuring or paying for the uninsured motorist insurance. It was carried by the employer. Therefore, *sub judice,* the only relevant factor to be considered is whether the amount of money collected is derived from "such other person" as defined by A.R.S. § 23–1023. *Id.* Thus, A.R.S. § 23–1023(C) controls the extent to which an insurance carrier will be subrogated to the injured employee's recovery.

Furthermore, Travelers' reliance on *Kilpatrick v. Superior Court,* 105 Ariz. 413, 466 P.2d 18 (1970), for the proposition that the court should apply equitable subrogation to the instant case is misplaced. In

*Kilpatrick*, petitioners argued that A.R.S. § 23–1023 prevented an injured employee from suing the fellow employee who had caused his injury. The court applied statutory construction principles in finding that A.R.S. § 23–1023 effectively prohibited suits against employers where benefits are paid, but that it did not prohibit suits against fellow employees. The petitioners expressed concern that a holding in favor of the injured employee would allow the employee a double recovery, one against the insurer, the other against the fellow employee tortfeasor. The court responded to this argument by noting that equitable subrogation was available to prevent a double recovery from occurring. *Kilpatrick* is inapposite to the instant case, however, since A.R.S. § 23–1023 clearly applies to the facts involved in the instant case. The legislature has determined the extent to which subrogation will apply under these circumstances, and that does not include factual situations other than those described in A.R.S. § 23–1023(A). No such limiting statutory or constitutional provisions were involved in the *Kilpatrick* case. Thus, we find that appellant's subrogation rights are limited by statute and may not be modified by equitable principles.[3]

## THE BROADWELL ACTION

Travelers also attempts to assert its claim directly against Broadwell by either intervening in the third-party action between the Breeses and Broadwell, or by joining Broadwell as a defendant. to its original action. As a matter of law, neither attempt is valid since Travelers does not

have a colorable claim that it could assert against Broadwell.

Travelers' contention that a nonprivity, third party may sue a malpracticing attorney in Arizona is not without support. This court was first presented with a third-party legal malpractice action in *Chalpin v. Brennan*, 114 Ariz. 124, 559 P.2d 680 (App. 1976). There the purchaser of stock in a corporation attempted to sue the corporation's attorney who had drafted the purchase agreement. The purchaser was not found to be the attorney's client. Nevertheless, the purchaser asserted that he was within the "foreseeable ambit of the employment relationship between [the corporation] and [the attorney]." The court held that under the facts in the case, it would follow the line of cases which "refuses to grant a cause of action for malpractice to an individual who is not a client or in privity with the attorney." *Id.* at 126, 559 P.2d at 682. The court distinguished the facts before it from those cases where the "benefit to an aggrieved third party is the foreseeable purpose of the underlying client-attorney relationship." *Id. See Worton v. Hines*, 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975); *Donald v. Garry*, 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971).

In *Fickett v. Superior Court of Pima County*, 27 Ariz.App. 793, 558 P.2d 988 (1976), Division Two of this court adopted a "balance of various factors" approach in determining third-party legal malpractice liability. The court listed the following factors to be considered:

> [T]he extent to which the transaction was intended to affect the plaintiff, the fore-

---

3. Even if equity were applicable, Travelers did not diligently pursue its rights in California. Under California's counterpart to A.R.S. § 23–1023, Cal.Labor Code § 3852 (West 1971), the insurer has a simultaneous right with the employee to sue the third party tortfeasor. California certainly would not have been constitutionally prevented from applying its own statute to this case, provided that certain minimum contacts were present. *See Crider v. Zurich Insurance Co.*, 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965); *Carroll v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). The only remaining issue would have been to determine California's choice of law in this situation. Tra-

velers, however, did not file a suit in California to determine its rights against Union Oil. Moreover, it has cited no California authority supporting its allegation that Arizona law would have prevented a suit in California during the one-year period. In fact, it appears to us that California's choice of law principles would have allowed a suit by Travelers to proceed during the one-year period. *See Offshore Rental Company, Inc. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). Therefore, we must reject Travelers' attempts to interject equity principles into its case where it had failed to assert its rights for an entire year.

seeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958); *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961); *Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969); *Licata v. Spector,* 26 Conn.Sup. 378, 225 A.2d 28 (1966); *Donald v. Garry,* 19 Cal. App.3d 769, 97 Cal.Rptr. 191 (1971).

*Id.* at 795, 558 P.2d at 990. *See also Lewis v. Swenson,* 126 Ariz. 561,. 617 P.2d 69 (App.1980). In *Fickett,* an attorney represented a guardian who the attorney knew was acting adversely to the ward's interests. The court held the attorney directly liable to the ward because the guardian-ward relationship creates a foreseeable duty to the ward which overshadows the interests of the guardian. 27 Ariz.App. at 795, 558 P.2d at 990. Thus, the *Fickett* decision relies heavily upon the "intended to affect the plaintiff" and "foreseeability of harm" aspects of the balancing test in extending liability to the attorney.

■ These two factors, coupled with the remaining elements of the test, reveal the absence of a sufficient relationship between Travelers and Broadwell to extend liability to Broadwell. First, unlike the underlying relationship in *Fickett,* Travelers was not intended to be the primary beneficiary of the relationship between the Breeses and Broadwell. Although it was foreseeable that Broadwell's failure to file suit against Union Oil within one year would deprive the Breeses of their cause of action, the same cannot be said of Travelers' rights. As we noted in footnote 3, Travelers did not pursue its remedies in California, nor did it have a right to rely on the Breeses by virtue of the Election of Remedies agreement. Moreover, applying the balancing test adopted in *Fickett,* there was an insufficient "closeness of the connection" (i.e., proximate cause), between Broadwell's conduct and the damages suf-

fered by Travelers. *See Fickett v. Superior Court, supra.* *See also* Comment, *Attorney Liability to Third Parties,* 19 Ariz. L.Rev. 653 (1977). Therefore, under either the more restrictive approach adopted in *Chalpin, supra,* or the *Fickett* balancing test, Travelers does not have a valid cause of action against Broadwell for malpractice.

The summary judgment is affirmed.

HAIRE, P.J., and MEYERSON, J., concur.