244 P.3d 1169

**In the Matter of the GUARDIANSHIP OF Rhule B. SLEETH, An Adult.**

**Rhule B. Sleeth and Mary Marjorie Sleeth, Appellants,**

v.

**Mark Sleeth, as former Guardian, Conservator, and Successor Trustee, Appellee.**

**No. 1 CA–CV 10–0093.**

Court of Appeals of Arizona, Division 1, Department E.

Dec. 9, 2010.

---

* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable J. William Brammer, Jr., Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

Stegall, Katz & Whitaker, P.C. by Charles T. Stegall, Loren I. Thorson, Phoenix, Attorneys for Appellants.

Dyer & Ferris, L.L.C. by Charles M. Dyer, Scott R. Ferris, Shad W. Blackford, Phoenix, Attorneys for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Rhule B. Sleeth ("R.B.") and his wife, Mary Marjorie Sleeth ("Marge"), appeal from the superior court's grant of an award of attorney's fees to Scott Ferris, counsel for Mark Sleeth, R.B.'s adult son. Mark incurred the attorney's fees while serving as R.B.'s guardian, conservator, and trustee. R.B. and Marge argue that the court abused its discretion and that in determining whether to grant a request for attorney's fees, the superior court should have considered a number of factors when exercising its discretion. For reasons that follow, we vacate the award and remand for further proceedings.

## BACKGROUND

¶ 2 R.B. and Marge became acquainted in 2003, and in the spring of 2004, Marge began living with R.B. in his home. In December 2007, after R.B. experienced some health problems, Mark filed a petition seeking appointment as temporary and permanent guardian and conservator for R.B.; Mark also sought appointment as temporary successor trustee of R.B.'s living trust.

¶ 3 Preliminary to his appointments, Mark hired Ferris of Dyer & Ferris as counsel. In January 2008, the court appointed Mark as temporary guardian, temporary conservator, and temporary successor trustee. In December 2007, Thomas G. Asimou filed a notice of appearance on behalf of R.B.[1]

¶ 4 Hearings took place in March and April 2008 on Mark's petition for permanent appointment, and in April, the court appointed Mark permanent guardian, conservator, and successor trustee. Mark filed an inventory that showed R.B.'s estate was worth approximately $1.4 million as of January 2008.

¶ 5 In June 2008, continuing conflict between Marge and Mark led Mark to take R.B. into his own home, change the locks on R.B.'s home, and notify Marge that she was to vacate the premises. In July 2008, Mark filed a forcible detainer action against Marge. Marge in turn filed a petition to remove Mark as guardian, and R.B.'s counsel joined in the petition. In September, Mark placed R.B. in an assisted living facility.

¶ 6 The court held evidentiary hearings on October 3 and 16, 2008. In November, Mark filed a "Guardian's Care Plan and Conditional Resignation."

¶ 7 In December 2008, the court issued a lengthy minute entry and found, among other things, that due to Mark's overprotection of R.B., Mark had not followed the court's instructions or the statutory requirements. The court granted Marge status as an interested person pursuant to A.R.S. § 14–1201(26) (Supp.2010)[2] but also found that Marge had not always acted in R.B.'s best interests. The court replaced Mark solely as guardian with an independent private fiduciary. It also determined that R.B. had sufficient capacity to marry.

¶ 8 In March 2009, R.B. returned home to live, and he and Marge were married. In June 2009, the court appointed Managed Protective Services, Inc. as R.B.'s conservator and successor trustee.[3] In October, the court terminated the guardianship as no longer necessary.

¶ 9 Meanwhile, however, in July 2009, Mark submitted a petition seeking approval of attorney's fees incurred between December 2007 and May 31, 2009 in the amount of $260,080.00 and out-of-pocket costs in the amount of $10,133.36 to be paid by R.B.'s estate. An exhibit to the petition indicated that Ferris' billing rate initially was $275.00 per hour and had increased to $325.00 per hour in June 2008 but provided neither a retention agreement nor an acknowledgment approving the increase. Marge filed an objection to the fee request, in which R.B. joined.

¶ 10 At oral argument, Marge's counsel, Charles Stegall, argued that Ferris' fee request failed to comply with Arizona Rule of Probate Procedure 33 as well as the standards adopted in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983) and *Schwartz v. Schwerin*, 85 Ariz. 242, 336 P.2d 144 (1959). Stegall argued that at the very least, Mark and his counsel must provide an accounting, a statement of the estate's net value, and an inventory of estate assets.

¶ 11 In November, the court signed an order approving payment of $270,213.36 in attorney's fees and costs, less a discount of $5,515.00, to Ferris for his representation of Mark from December 10, 2007 through May 31, 2009. In addition, R.B.'s guardian ad litem, attorney Sabrina Ayers Fisher, charged $235.00 per hour for her time and

---

1. Our record does not reveal how or precisely when Asimou was retained.

2. The statute provides in part that "any trustee, heir, devisee, child, spouse, creditor, beneficiary, person holding a power of appointment and other person who has a property right in or claim against a trust estate or the estate of a decedent, ward or protected person" may be an interested person.

3. Mark filed what he termed a "Final Accounting" in July that did not state the value of R.B.'s estate, noted that the estate owed him more than $100,000, and reported disbursements exceeding $284,000 explained only by a notation of "check missing."

sought $38,508.67 for her services from February 2008 through May 22, 2009. R.B.'s independent counsel, Asimou, charged $300.00 per hour and requested attorney's fees and costs in the amount of $142,499.69. All requested attorney's fees were approved by the superior court. In total, R.B.'s estate was subjected to claims for attorney's fees and costs in the amount of $445,706.72.[4]

## DISCUSSION

¶ 12 On appeal, R.B. and Marge assert that the superior court abused its discretion in ordering full payment of Ferris' fees without considering (a) that such fees were too high and not justified because Mark had been removed as guardian, conservator, and trustee after the court found that some of Mark's actions had not been in R.B.'s best interest; (b) the fees were not justified in light of Mark's lack of success in the litigation over R.B.'s care and estate and (c) Ferris' improper billing methods. In general, we review an award of attorney's fees and costs for an abuse of discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004). Issues of statutory interpretation, however, represent issues of law subject to *de novo* review. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24, 126 P.3d 165, 173 (App.2006).

### *Guardians and Conservators*

¶ 13 The statutory scheme governing guardianships permits an award of "reasonable" attorney's fees. Section 14–5314(A) (Supp.2010) states in part that "[i]f not otherwise compensated ..., an investigator, ... lawyer, physician, ... or guardian who is appointed pursuant to this article, including an independent lawyer representing the alleged incapacitated person pursuant to § 14–5303, subsection C, is entitled to *reasonable* compensation from the estate of the ward if

the petition is granted." (Emphasis added.) Subsection C provides: "A lawyer who is employed by the guardian to represent the guardian in the guardian's appointment or duties as guardian is entitled to *reasonable* compensation from the ward's estate if the petition is granted." (Emphasis added.) Furthermore, subsection D states: "A lawyer who is employed by the petitioner to represent the petitioner in seeking the appointment of a guardian is entitled to *reasonable* compensation from the ward's estate if the petition is granted." (Emphasis added.)

¶ 14 Virtually identical language in statutes governing conservators allows for an award of *reasonable* attorney's fees. Section 14–5414(A) (Supp.2010) states that a "lawyer, physician, ... or conservator who is appointed in a protective proceeding, including a lawyer of the person alleged to be in need of protection pursuant to § 14–5407, subsection B, is entitled to *reasonable* compensation from the estate of the protected person if the petition is granted or from the petitioner if the petition is denied." (Emphasis added.) Similarly, a conservator who employs a lawyer "to represent the conservator in the conservator's appointment or duties as conservator is entitled to *reasonable* compensation from the estate if the petition is granted." A.R.S. § 14–5414(C) (emphasis added). And, a petitioner who hires a lawyer for purposes of seeking to be appointed conservator "is entitled to *reasonable* compensation from the protected person's estate if the petition is granted." A.R.S. § 14–5414(D) (emphasis added).

¶ 15 In applying these statutes, the superior courts may find guidance in Arizona Rule of Probate Procedure 33.[5] The Rule requires that requests for payment to "personal representatives, trustees, guardians, conservators, or their attorneys" if based upon hourly rates must be accompanied by "a detailed statement of the services ... [and]

---

4. Stegall, Marge's counsel, has served as her counsel on a pro bono basis.

5. Rule 1 of the Arizona Rules of Probate Procedure states that the Rules "govern procedures in all probate proceedings, including guardianships,

conservatorships, decedents' estates, trusts, and related matters, as well as proceedings to challenge or enforce the decision of one authorized to make health care decisions for a patient."

tasks performed, the dates [of] such services ..., the time expended ..., the name and position of the person who performed the services, and the hourly rate charged." Ariz. R. Prob. P. 33(A)(1). In addition, if seeking reimbursement for costs, a request must identify the item, the amount, the date incurred, and its purpose. Ariz. R. Prob. P. 33(A)(2). If compensation was not based on an hourly rate, one requesting payment must provide "an explanation of the fee arrangement and computation of the fee." Ariz. R. Prob. P. 33(A)(3).

¶ 16 The comment to Rule 33 illustrates that beyond scant statements of services and time spent, courts should consider a variety of factors when reviewing a request for compensation. For example,

> [T]he amount of principal and income received and disbursed by the fiduciary, the fees customarily paid to agents or employees for performing like work in the community, the success or failure of the administration of the fiduciary, any unusual skill or experience that the particular fiduciary may have brought to the work, the fidelity or disloyalty displayed by the fiduciary, the degree of risk and responsibility assumed by the fiduciary, the custom in the community as to allowances to trustees by settlers or courts and as to fees charged by trust companies and banks, the nature of the services performed in the course of administration (whether routine or involving skill and judgment), and any estimate that the fiduciary has given of the value of the services. See Mary F. Radford, George G. Bogert & George T. Bogert, The Law of Trusts & Trustees § 977 (3d ed.2006).

(Emphasis added).

¶ 17 The comment continues:

> Similarly, when reviewing the attorney's compensation, the court should consider, among other factors, the attorney's ability, training, education, experience, professional standing, and skill; the character of the work performed by the attorney (its difficulty, intricacy, and importance, time

and skill required, and the responsibility imposed ); the work actually performed by the attorney (the skill, time, and attention given to the work by the attorney); and the success of the attorney's efforts and the benefits that were derived as a result of the attorney's services. See Schwartz, 85 Ariz. at 245–46, 336 P.2d at 146.

(Emphasis added).

¶ 18 This comment makes clear that the courts must consider more than merely the time expended when fees will be levied against the estate of a protected person. Both counsel and the fiduciary have a duty to undertake a cost-benefit analysis at the outset and throughout their representation to ensure that they provide needed services that further the protected person's best interests and do not waste funds or engage in excessive or unproductive activities. If frequent ongoing scrutiny by the superior court appears necessary, the court should require frequent updates so it can monitor and restrain unwarranted charges. See A.R.S. § 14–5416(A)(2) (2005) (any interested person may petition for an order requiring an accounting for the protected person's estate); A.R.S. § 14–5418(A), (B) (conservator shall prepare estate inventory within ninety days of appointment, keep suitable records, and "exhibit them on request of any interested person"); A.R.S. § 14–5419(A) (Supp.2010) (conservator must account "not less than annually" and on "resignation or removal").

¶ 19 As the comment to Rule 33 also suggests, and our courts have long acknowledged, "[i]t is the law of guardianships, anciently and well established, that at all times, the court must be guided by what is in the best interest of the ward." In re Farson's Estate, 77 Ariz. 196, 201, 269 P.2d 600, 603 (1954). Our statutes accordingly provide that "a conservator is to act as a fiduciary and shall observe the standard of care applicable to trustees as described by §§ 14–10804 and 14–10806." A.R.S. § 14–5417 (Supp.2010).

¶ 20 The parties also cite the National Probate Court Standard 3.1.5, Attorneys' and

Fiduciaries' Compensation, which lists eight possible factors to aid courts in determining whether a fee request is reasonable, *one of which is the benefit derived by the provision of an attorney's services.*[6] The commentary emphasizes that "[t]ime expended should not be the exclusive criterion for determining fees ... [and] *should not warrant an award of fees in excess of the worth of the services performed.*" (Emphasis added.) In addition, the commentary notes that courts should encourage rendering of services "in the most efficient and cost-effective manner feasible" and appropriate delegation to para-professionals. Furthermore, the "attorney or fiduciary has the burden of proving the reasonableness of the fees requested ... [and] [i]mproper actions ... may justify a reduction or denial of compensation."

 ¶ 21 We endorse these suggestions and encourage fiduciaries and attorneys to diligently search for ways to increase efficiency and to employ cost-reducing measures that will preserve as much as possible the protected person's estate. Obviously, fiduciaries and their attorneys must avoid the pursuit of pyrrhic victories that accomplish little but to bankrupt the protected person. Thus, between Arizona Probate Rule 33 and the National Probate Standard, superior courts will find adequate support for close examination of fees and costs that ultimately may be borne by a protected person.

 ¶ 22 Here, Marge and R.B. contend that the court failed to fully consider Mark's lack of success in defending his appointment as guardian and conservator and that a substantial portion of Ferris' fees accrued after Marge petitioned for Mark's removal and involved resistance to discovery and other wrongful conduct. We agree that whether counsel has filed unnecessary motions or engaged in unproductive litigation are factors that the superior court should consider.

¶ 23 Marge and R.B. also contend that Mark failed to provide an adequate accounting of expenditures from R.B.'s estate and that without a full understanding of Mark's performance as conservator, the court could not assess whether Ferris' fees for representing Mark were reasonable. We concur: an accounting is necessary for the court to evaluate the fees requested.

¶ 24 Ferris and Mark respond that the superior court did not abuse its discretion in awarding the entire amount requested. They contend that none of the statutes require that the protected person or his estate derive any benefit from the legal fees incurred. In support, they cite *Schwartz,* a case in which an attorney sought payment on a quantum meruit basis for services rendered. 85 Ariz. at 244, 336 P.2d at 145. Our supreme court, however, identified four general factors for valuing an attorney's work, including "whether the attorney was successful and what benefits were derived." *Id.* at 246, 336 P.2d at 146. *Schwartz* does not support their position.

¶ 25 We acknowledge that our statutory scheme anticipates that a conscientious guardian or conservator may wish to hire an attorney to obtain advice on how best to protect and benefit the protected person and his estate. The relevant statutes thus properly allow for payment of reasonable attorney's fees. But if we were to accept that a court can ignore whether the attorney and fiduciary pursued the protected person's best interest or conferred any benefit from their services, a court might feel bound to approve an absurd amount of fees that generated an arguable "benefit" worth only a few dollars. We cannot agree that the legislature intended that courts overlook whether an attorney's or a fiduciary's services produced any value or benefit to the protected person. If an attorney has performed services that were not needed or of corresponding value to the

---

**6.** The other factors are: the usual and customary fees in the legal community; the risks and responsibilities associated with the services; the estate's size; the character of the services or the complexity of the issues; the amount of time required; the skill and expertise required; the experience, reputation, and ability of the provider. National Probate Court Standards, § 3.1.5. cmt.

protected person, that cannot constitute "reasonable" conduct deserving of "reasonable" compensation. Therefore, we conclude that whether the attorney's efforts were successful and whether the services provided any benefit or attempted to advance the protected person's best interests are important factors for the superior court to consider when evaluating a fee request from counsel for a guardian or conservator.

■ ¶ 26 Moreover, although the statutes require the protected person to pay for the services of those appointed or hired to assist him, this case illustrates an underlying flaw in the scheme that makes all the more compelling the superior court's close scrutiny of fee requests. Mark's responsibility, shared with Ferris, was to promote R.B.'s best interests. Yet, R.B. did not hire Ferris, did not know him, and did not control, guide or direct Ferris in any way. R.B. could not set an outer limit on fees, call a halt to their continuing accretion, or retain new counsel when Ferris raised his hourly rate. Only Mark had the power to limit Ferris' charges. When a guardian or conservator has no personal financial obligation for attorney's fees and no concern over whether his expenditures will be fully approved, he may lack incentive to avoid financial improvidence. In a case in which the protected person's estate suffers significant and harmful losses, the superior court must exercise its independent judgment to determine what portion of the attorney's fees were reasonably incurred. Otherwise, there is no motivation for attorneys to judiciously weigh the cost of their actions against the risks and potential harm to the protected person's estate.

¶ 27 In sum, judges play a vital role in fulfilling the legislature's intent to safeguard those in need of the protection of conservators and guardians. We cannot agree that the legislature intended that the wisdom, success, or impact of counsel's advice and conduct should play no part in the court's

exercise of its discretion to oversee fee awards. To suggest that any action taken by counsel, however futile or unsound, warrants court approval is insupportable.

### Trustees

■ ¶ 28 Section 14–11004 of the Arizona Trust Code allows reimbursement of a trustee for *"reasonable* fees, expenses and disbursement, *including attorney fees and costs,* that arise out of ... the *good faith* defense or prosecution of a judicial ... dispute resolution proceeding involving the administration of the trust, *regardless of whether the defense or prosecution is successful."* A.R.S. § 14–11004(A) (Supp.2010) (emphasis added).

¶ 29 Section 14–10804 (Supp.2010) states: "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements and other circumstances of the trust. In satisfying this standard, the trustee shall exercise *reasonable* care, skill and caution." (Emphasis added.) Another statute provides that when "administering a trust, the trustee may incur only costs that are *reasonable* in relation to the trust property, the purposes of the trust, and the skills of the trustee." A.R.S. § 14–10805 (Supp.2010) (emphasis added). These statutes all demonstrate the legislature's intent to ensure that fiduciaries and those hired to assist them act with prudence when dealing with the property of another and expect that their actions will be scrutinized in light of their obligations to preserve and protect.[7]

¶ 30 Mark and Ferris cite A.R.S. § 14–11004 for the proposition that Ferris' representation need not have been successful in order to merit payment. As noted, this statute allows reimbursement of a trustee for "reasonable ... attorney fees and costs ... [due to] the good faith defense or prosecution of a judicial ... dispute resolution proceeding involving the administration of the trust,

---

7. *See* A.R.S. § 14–5312 (2005) (powers and duties of guardians) and § 14–5424 (2005) (pow- ers and duties of conservators).

*regardless of whether the defense or prosecution is successful." Id.* (emphasis added). However, nothing in § 14–11004 suggests that it authorizes an uncritical award of attorney's fees to a trustee. We have interpreted a similar statute, A.R.S. § 14–3720 (2005), which permits reimbursement of a personal representative for attorney's fees incurred in prosecuting or defending *a claim even if the efforts are not successful,* as long as the litigation was undertaken *in good faith.* We held that the reference to "good faith" requires an objective determination based on all of the circumstances. *In re Estate of Gordon,* 207 Ariz. 401, 406, ¶ 24, 87 P.3d 89, 94 (App.2004). We also concluded that benefit to the estate is a "circumstance that can assist in determining" whether good faith motivated the litigation. *Id.* at ¶ 25. Thus, evidence of a benefit to the estate may indicate good faith and is a factor to be considered, just as the lack of benefit may reflect the absence of good faith. *Id.* at ¶ 26. Mark and Ferris have not suggested why we should not apply the reasoning of *Gordon* with equal force to A.R.S. § 14–11004.

¶ 31 As we have noted, this case illustrates the need for on-going and continuous assessments by the trustee, counsel, and the court of the costs of pursuing a dispute when weighed against the likely benefits to be gained by the protected person. When "winning" a dispute results in lost financial security for the protected person, those seeking an award of attorney's fees must defend the appropriateness of their decision to pursue such an expensive dispute.

### Other Related Issues

■ ¶ 32 Mark and Ferris argue that the superior court could approve their fee request without first having approved an accounting of Mark's service as conservator because the court was familiar with the parties and proceedings. Familiarity with the contentious history of this case is in no way equivalent to the receipt of an accounting. Furthermore, § 14–5419 explicitly requires an accounting not only annually but upon removal of a conservator. And, as noted, the court must consider the benefit obtained from the rendition of services and thus how Mark chose to spend R.B.'s money.

■ ¶ 33 Mark and Ferris further note that no one objected to the "comparable" attorney's fees awarded to Asimou, R.B.'s attorney. Asimou received $142,499.69 in fees and costs, which is more than $100,000 less than Ferris sought. Although we might agree that Asimou's fees were excessive, they are not before us on appeal. Furthermore, the lack of challenge to Asimou's fees does not validate Ferris' fee award. Each request must stand on its own and ought equally be subject to the court's scrutiny.

¶ 34 Next, we turn to Ferris' billing practices, and specifically his habitual recording of only half-hour or one-hour increments and his practice of grouping tasks together in a block so that time spent on each task cannot be reviewed for its reasonableness. The federal courts have disapproved this type of "block-billing" and reduced fee requests accordingly. *See Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1223 (9th Cir.2010) (affirming district court's finding of 80% of entries block-billed and reducing 80% of billable hours by 30%); *Welch v. Met. Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir.2007) (discounting block-billed hours in light of State Bar Committee report that block-billing may overstate time spent by 10 to 30 percent and tends to conceal actual time spent on particular tasks); *Sunstone Behavioral Health, Inc. v. Alameda County Med. Ctr.,* 646 F.Supp.2d 1206, 1214 (E.D.Cal.2009) (when reviewing block-billing, court must compare hours spent with tasks performed to determine reasonableness). Because Mark and Ferris bear the burden to persuade the court that the requested fees are reasonable, on remand the superior court should consider whether each entry of block-billing provides sufficient detail to support an award for that entry.

¶ 35 Marge and R.B. also argue that Ferris improperly billed Mark "thousands of dollars" for clerical work that normally would be included in an attorney's overhead. On re-

mand, the superior court should consider whether charges for copying, faxing, emailing, and file maintenance activities, performed by a paralegal whose time was billed at $100.00 per hour, were reasonable.

¶ 36 Finally, we note that in *Fickett v. Superior Court,* 27 Ariz.App. 793, 795, 558 P.2d 988, 990 (1976), we held that "when an attorney undertakes to represent the guardian of an incompetent, he assumes a relationship not only with the guardian but also with the ward," the intended beneficiary. In fact, we held "that the ward's interests overshadow those of the guardian" and that an attorney who fails to act to preserve "the ward's property for his own use, as distinguished from the benefit of others," *id.,* cannot escape liability for wrongful conduct on the ground of lack of privity. *Id.* at 796, 558 P.2d at 991. The principle that attorneys' obligations go beyond the representation of a guardian, conservator, and trustee will require attorneys to remain keenly aware that they also serve the protected person and the trust beneficiary.

## CONCLUSION

¶ 37 We vacate the superior court's order approving Ferris' fees request and remand for the court to consider the factors identified herein. We encourage the court to explain its findings and its analysis of the various factors for the enlightenment of the parties and to facilitate appellate review.

¶ 38 Mark and Ferris have requested an award of costs and attorney's fees incurred in this appeal pursuant to A.R.S. §§ 12–341, 12–341.01, 12–349, and 33–420(A). They also request a sanction pursuant to Arizona Rule of Civil Appellate Procedure 25. In light of our decision, we deny such requests. Marge and R.B. are entitled to their costs on appeal subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PHILIP HALL, Presiding Judge and DONN KESSLER, Judge.