NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

In the Matter of the Guardianship of:

RAYMOND F. KINGSTON, *An Adult.*

DOUGLAS J. KINGSTON, *Petitioner/Appellant,*

*v.*

LANCE KINGSTON, et al., *Respondents/Appellees.*

No. 1 CA-CV 21-0174
FILED 12-7-2021

Appeal from the Superior Court in Maricopa County
No.  PB 2017-003648
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Shumway Group PLC, Scottsdale
By Jeff A. Shumway
*Counsel for Petitioner/Appellant*

Murray Henner Esq., Scottsdale
By Murray Henner
*Counsel for Respondent/Appellee Lance Kingston*

Paul Theut Probate Law PLC, Phoenix
By Paul J. Theut
*Counsel for Respondent/Appellee Raymond F. Kingston*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

---

**H O W E**, Judge:

**¶1**        Douglas J. Kingston appeals the trial court's order sanctioning him and his counsel for bringing unjustified claims in a guardianship proceeding involving his stepfather, Raymond Kingston.[1] For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Raymond, in his late eighties, required extensive in-home care for various health issues. Raymond appointed his son, Lance Kingston, agent under various durable powers of attorney, to make his financial and medical decisions. Douglas did not believe that Lance was providing Raymond adequate care and supervision, however, and in December 2017, petitioned for the appointment of a third-party temporary and permanent guardian for Raymond. The court appointed Raymond counsel, and the parties submitted medical reports on Raymond's competency. Raymond opposed the guardianship, believing that Douglas had requested guardianship because he had recently changed the beneficiaries of his estate. He also requested that if the court granted the petition, it would appoint Lance as guardian and conservator. Heather Frenette, one of the medical experts, examined Raymond and determined that he was competent, although needing professional in-home care.

---

[1]        Because this case involves a family matter in which all parties have the same last name, we respectfully address the parties by their first name for clarity.

¶3 Based in part on Frenette's report, Douglas conceded that Raymond was competent, and the parties agreed to a settlement, submitting a stipulated order for the court. The order required Frenette to oversee Raymond's care and, among other things, to verify that his medications were properly administered, that he remained satisfactorily ambulatory, and that he maintained an appropriate diet and hygiene. The court also ordered that Lance, when making a health-care decision as Raymond's agent, use all reasonable means to consult Douglas before or during the decision-making process. Lance was also required to inform Douglas or Frenette within three hours of Raymond's unplanned admission to a hospital or his receipt of other unplanned medical treatment. The court then found that the petition for permanent guardianship was moot (together "the April orders").

¶4 In January 2019, Douglas petitioned for emergency enforcement of the April orders and sought appointment of a guardian ad litem for Raymond. Raymond and Lance opposed the petition, submitting a physician's affidavit that Raymond had "mental acuity" and "knows what he wants and made that well known. He is lucid, alert, and competent." The physician also reported that Raymond did not want to see Douglas because Douglas had continually "harassed" him.

¶5 The court found that it lacked authority to appoint a guardian ad litem without a finding of incapacity ("the August order"). It also reiterated that the April orders rendered moot both the temporary and permanent petitions because the parties had decided to enter an agreement "instead of the 2017 Petition going forward." It did find, however, that Lance had failed to fully comply with the April orders and made additional orders consistent with those orders. Douglas moved for reconsideration and the motion was denied.

¶6 Douglas obtained new counsel and moved in August 2020 for a mental examination of Raymond under Arizona Rule of Civil Procedure 35, claiming that Raymond had not had an evaluation since the August order. Raymond and Lance moved for sanctions because no issues were pending before the court and no good cause existed for the Rule 35 order. At the hearing, Douglas argued that the petition for temporary and permanent guardianship was fairly before the court because no final judgment had been entered. Raymond and Lance responded that the parties had fully settled the temporary guardianship and that the court had found both the temporary permanent guardianship moot in the April orders. Douglas replied that the Rule 35 evaluation was impossible based on medical records that he had received before the hearing, and he

withdrew the motion at the end of the oral argument. He maintained, however, that he wanted a hearing on whether a guardian ad litem was required because the original petition was still before the court since no final judgment had been entered under Arizona Rule of Civil Procedure 54(c), which states that a "judgment as to all claims and parties is not final unless the judgment recites that no further matters remain pending and that the judgment is entered under Rule 54(c)." Ariz. R. Civ. P. 54(c).

¶7            The court again found no pending issue before it because the April orders made the petition for temporary and permanent guardianship moot. It found that Douglas and his attorney had engaged in unreasonable conduct under A.R.S. § 14–1105, which provides that if a protected person in a guardianship proceeding incurs fees for another party's unreasonable conduct, then the court may order that party to pay some or all the protected person's fees and costs. It then ordered the attorneys for Raymond and Lance to apply for fees and costs associated with defending against the recent motions.

¶8            Raymond requested $11,313.65 and Lance requested $16,347.50. Each requested $400.00 an hour for almost 70 hours of total work spent on defending the August 2020 motions. In his response, Douglas argued that the amount requested for "responding to the total of four paragraphs in the two filings" was unreasonable on its face. Douglas also argued that Raymond sought $160 in fees unrelated to the motion and Lance sought $1,800 for time spent before Douglas's Rule 35 filing. Douglas also argued that Raymond sought $2,560 and Lance sought $1,240 in fees for work that they needed to perform under the April orders and therefore was not related to the defense of the Rule 35 filing and associated hearing. He also claimed that the attorneys "block" billed and failed to provide specific detail to determine whether the bill was reasonable. Raymond's attorney responded by removing $160 in fees unrelated to the motion.

¶9            The court then sanctioned Douglas and his counsel, finding that Douglas and his attorney had engaged in unreasonable conduct in requesting an appointment of a guardian ad litem when no proceeding was before the court and no finding of incapacity had been made, and in withdrawing the Rule 35 motion at the end of oral argument when counsel was aware before the start of the hearing that his motion had no basis. It then awarded $11,153.65 to Raymond under A.R.S. § 14–1105 and A.R.S. § 12–349 and $16,347.50 to Lance under A.R.S. § 14–1105. It found the fees reasonable because the attorneys exhibited appropriate skill and time required in probate litigation to keep the litigation costs from going beyond the oral argument. Also, their fee statements appropriately set forth their

actual work performed, their substantial experience in this area of law, and their success for their clients in compliance with the fee request requirements of *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183 (App. 1983) and *In re Guardianship of Sleeth*, 226 Ariz. 171 (App. 2010). Douglas timely appeals.

**DISCUSSION**

**¶10** Douglas argues that the court erred in imposing sanctions against him under A.R.S. §§ 14–1105 and 12–349 for Raymond's and Lance's attorneys' fees and that the fees were unreasonable. We review the evidence in a manner "most favorable to sustaining the award and affirm unless the trial court's finding" is clearly erroneous. *Goldman v. Sahl*, 248 Ariz. 512, 531 ¶ 65 (App. 2020); *see also In re Conservatorship for Mallet*, 233 Ariz. 29 ¶ 7 (App. 2013) (applying abuse of discretion standard for a fee award under A.R.S. § 14–1105(B)). We review the trial court's application of a statute, however, de novo. *See e.g.*, *Goldman*, 248 Ariz. at 531 ¶ 65.

**I.      Award of sanctions under A.R.S. §§ 14–1105 and 12–349**

**¶11** The trial court did not err in awarding attorneys' fees to both attorneys. Under A.R.S. § 14–1105(B), if the court finds that a "ward or protected person has incurred professional fees or expenses because of unreasonable conduct," the court "may order the person who engaged in the conduct or the person's attorney, or both," to pay for some or all of the fees and expenses as the "court deems just under the circumstances." *Ward* is "a person for whom a guardian has been appointed," and *protected person* means a "person for whom a conservator has been appointed or any other protective order has been made." A.R.S.§ 14–5101(10), (16). The remedies allowed under A.R.S. § 14–1105(B) extend to a protected person's fiduciary, including a person's agent under a durable power of attorney or agent under a health care power of attorney. A.R.S. § 14–1105(C), (D)(2). Douglas does not dispute that Raymond was subject to a protective order after the court's April orders, *see* A.R.S. § 14–5101(10); A.R.S. § 14–5401(A), and that Lance was Raymond's fiduciary, A.R.S. § 14–1105 (D)(2).

**¶12** The parties' stipulated agreement addressed all concerns in the original petition for a temporary and permanent guardian or conservator, thereby making the original petition moot. *See Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 603 ¶ 17 (App. 2016) (A case becomes moot if "an event occurs that ends the underlying controversy" and transforms the litigation into an abstract question that does not arise upon existing facts or rights.); *cf. Contempo-Tempe Mobile Home Owners Ass'n v.*

*Steinert*, 144 Ariz. 227, 230 (App. 1985) (finding that the parties' stipulation can moot an issue). In enforcing the April orders against Lance in the August order, the court properly rejected Douglas's motion for the appointment of a guardian ad litem because nothing in the April orders suggested that Raymond was incapacitated. *See* A.R.S. § 14–1408 (stating that the court may appoint guardian ad litem to represent the interest of an incapacitated person). It also reiterated that the stipulated agreement and signed order made Douglas's original petition moot and that the parties had decided not to proceed with the original petition. The court thus clearly held that it had found the petition for guardianship or conservatorship to be substantively ended by the stipulated agreement and that no matters remained pending before it. The court therefore did not abuse its discretion in finding that Douglas's subsequent 2020 motions were frivolous and that Douglas's request for guardian ad litem at the end of the August 2020 hearing was unreasonable.

¶13        The court also found that Douglas's failure to withdraw his request for Rule 35 mental examination was unreasonable. Under Rule 35(a)(2)(A), at any time during a proceeding, the court may order an examination only on motion for "good cause." No proceeding was before the court, so no good cause existed for a Rule 35 examination. Indeed, Douglas's counsel conceded during the hearing that information he had received before the hearing made such an examination unjustified. The court therefore did not abuse its discretion in finding that Douglas's failure to withdraw his Rule 35 motion before the hearing was unreasonable conduct. *Cf. Roberts v. Kino Cmty. Hosp.*, 159 Ariz. 333, 336 (App. 1988) (finding that plaintiff's motion to dismiss unjustified claim before the hearing set on the matter and two days after realizing claim was unjustified was reasonable and therefore did not warrant sanctions).

¶14        Douglas nevertheless argues that the court erred in sanctioning him when no final judgment had been entered under Arizona Rule of Civil Procedure 54(c). He claims that because the April and August orders did not have the requisite finality language under Rule 54(c), were merely temporary, and did not finally resolve the original petition. While true that the court's failure to provide the requisite finality language required by Rule 54(c) kept the order from being a final judgment under Rule 54 and procedurally appealable, Ariz. R. Civ. P. 54; *see also In re Guardianship of Sommer*, 241 Ariz. 308, 313–14 ¶ 26 (App. 2016) (appellate court lacked jurisdiction to consider appeal from guardianship and conservatorship petitions without Rule 54(c) finality language), the lack of language necessary to make an order appealable does not affect the order's conclusive effect as to the case's substantive issues. A trial court's order that

"adjudicates the rights of the parties with regard to the issues raised in the guardianship and conservatorship petition" is "similar to a final judgment." *In re Guardianship of Sommer*, 241 Ariz. at 312 ¶ 19; *see also* A.R.S. § 12–2101(A)(9). The April and August orders thus resolved the matters before the trial court, and Douglas and his counsel's further litigation on resolved matters was improper and sanctionable regardless of the lack of finality language.

¶15　　　Douglas next argues that if the court had intended the April orders to substantively resolve the original petition, then it would not have heard his August 2019 emergency motion. This is incorrect. The court retained jurisdiction to enforce its order memorializing the parties' agreement. *See* A.R.S. § 14–1302(B), –12205. Even so, it reiterated its earlier order finding the original petition moot and refused to address issues arising from the original petition that were outside what the parties had stipulated to in the agreement. *See Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, 377 ¶ 9 (App. 2008). Because we affirm based on A.R.S. § 14–1105, we need not review the trial court's award under A.R.S. § 12–349.

## II.　　Reasonableness of the awarded attorneys' fees

¶16　　　Douglas also argues that the awarded fees were unreasonable. We review an award of attorneys' fees and costs for an abuse of discretion. *Sleeth*, 226 Ariz. at 174 ¶ 12. "In reviewing for an abuse of discretion, the question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge." *Solimeno v. Yonan*, 224 Ariz. 74, 82 ¶ 36 (App. 2010).

¶17　　　An attorney's affidavit supporting a fee application should include at a minimum the type of legal services provided, the date the service was provided, the attorney providing the service, and the time spent in providing the service. *Schweiger*, 138 Ariz. at 188. In assessing the reasonableness of the requested fees, courts consider (1) the qualities of the advocate; (2) the character of the work to be done; (3) the work performed by the lawyer; and (4) the result. *Id.* at 187. Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to show the impropriety or unreasonableness of the requested fees. *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 490–91 ¶ 38 (App. 2007). To successfully challenge the application for attorneys' fees, the opposing

party must do so with specificity. *Cook v. Grebe*, 245 Ariz. 367, 370 ¶ 11 (App. 2018).

¶18 The court found that the requested fees were reasonable considering the character of the work in the probate field and the attorneys' related experience and skill. The fees requested were detailed enough to allow the court to determine what occurred, even if the specific topics of discussion were not exhaustively listed. In overruling Douglas's objections, the court found that the awarded fees were from the time that Douglas's new attorney noticed his appearance and therefore related to Douglas's and his attorney's behavior in the litigation. Reviewing the record, we cannot find that the court "exceed[ed] the bounds of reason" and abused its discretion in its fees award. *See Solimeno*, 224 Ariz. at 82 ¶ 36.

¶19 Douglas argues that the fee application consisted of block billing in violation of the Arizona Code of Judicial Administration § 3–303(D)(2)(c). Under the code, *block billing* occurs when a "timekeeper provides only a total amount of time spent working on multiple tasks, rather than itemization of the time expended on a specific task." Ariz. Code of Jud. Admin. § 3–303(D)(2)(c). In *Sleeth*, this court found that an attorney's "recording of only half-hour or one-hour increments and his practice of grouping tasks together in a block" could not be reviewed for its reasonableness. 226 Ariz. at 178 ¶ 34. The record does not support Douglas's argument that either attorney block-billed, however. Unlike the billing practices in *Sleeth*, the attorneys here billed at a tenth of an hour, providing multiple entries for each date and listing only one activity for the time billed. While the fee applications showed that the attorneys billed "research" in longer periods of time, the entries provided details about what the research entailed, allowing the court to determine the reasonableness of the activity and fee. Nothing in the code requires attorneys to record a more particularized and itemized list of what exactly they looked at in their research. Ariz. Code of Jud. Admin. § 3–303(D)(2)(c). Thus, the court did not abuse its discretion in finding that the only instance, perhaps, of block billing occurred for non-charged services. Douglas's remaining arguments are unpersuasive.

### III. Attorneys' fees on appeal

¶20 Both parties request attorneys' fees under A.R.S. § 12–349. Under A.R.S. § 12–349, a court shall assess reasonable attorney fees if an attorney or party brings or defends a claim without substantial justification, brings or defends a claim solely or primarily for delay or harassment, unreasonably expands or delays the proceeding, or engages in an abuse of

discovery. A.R.S. § 12–349(A). Without substantial justification means that the "claim or defense is groundless and is not made in good faith." A.R.S. § 12–349(F).

**¶21** We deny Douglas his attorneys' fees because he did not succeed on appeal. We award Raymond and Lance's request for reasonable attorneys' fees, however, because the appeal was brought without substantial justification. A.R.S. § 12–349(A)(1). The trial court had twice told Douglas before the August 2020 motions and hearing that no action was pending. Yet Douglas requested a concededly "impossible" Rule 35 hearing and did not dismiss or vacate the hearing upon realizing its lack of justification. Douglas's appeal from that determination is both groundless and is not made in good faith and therefore unjustified under A.R.S. § 12–349(A)(1). *Cf. Roberts*, 159 Ariz. at 336. As the prevailing party, Raymond and Lance are also awarded their costs on appeal upon their compliance with ARCAP 21.

## CONCLUSION

**¶22** For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

9