NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of Conservatorship for:

A.R.,
*a minor,*

MYKEL CHAMBERS,
*Petitioner/Appellee,*

v.

LAW OFFICE OF GREGORY L. LATTIMER, PLLC,
*Appellant.*

No. 1 CA-CV 21-0531
FILED 7-26-2022

Appeal from the Superior Court in Maricopa County
No. PB2014-003388
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Law Offices of Joseph M. Boyle, Phoenix
By Joseph M. Boyle
*Co-Counsel for Appellee A.R.*

Theut, Theut & Theut, PC, Phoenix
By Brian J. Theut
*Co-Counsel for Appellee A.R.*

———————————————

**MEMORANDUM DECISION**

———————————————

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.[1]

**W E I N Z W E I G**, Judge:

**¶1**     The Law Offices of Gregory Lattimer appeals the denial of its petition for attorney fees from A.R.'s conservatorship.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**     Rumain Brisbon was shot and killed by Phoenix police on December 2, 2014.  He died intestate, survived by four children, including daughter A.R., and his parents, including his father Ricky McGee.

**¶3**     Mykel Chambers was A.R.'s mother.  Chambers wore two hats in this case.  She was first the conservator of A.R.'s conservatorship and later the personal representative of Rumain's estate.  On December 9, donning her conservator hat, Chambers hired Gregory Lattimer to pursue any claims A.R. had as a result of Rumain's death.  Chambers signed a written fee agreement for Lattimer to assert A.R.'s tort claims against the City of Phoenix.  She did not, however, indicate whether she signed as an individual or in a representative capacity.  Because Lattimer was licensed only in the District of Columbia, Chambers also retained the Jenkins Law Firm ("Jenkins") as local counsel.

**¶4**     About 11 months later, after she was appointed as personal representative of Rumain's estate, Chambers signed a second written fee agreement.  This time, under the agreement, Lattimer would assert the tort

———————————————

[1]     IT IS ORDERED the above caption must be used in all further filings with the court.

2

claims of both A.R. and the estate. Both fee agreements provided that Lattimer would receive a one-third contingency fee if the case was resolved before he sued, or forty percent if a lawsuit was required.

**¶5** Also around this time, Lattimer accepted a third client, father McGee. Apparently forgetting to change the template, McGee and Lattimer entered a written agreement for Lattimer to press McGee's tort claims "for the injuries *my daughter sustained* as a result of the shooting death of Rumain Brisbon." McGee also retained Jenkins as local counsel. McGee agreed to pay the same contingency fee as A.R. and the estate.

**¶6** And so, Lattimer now represented three clients in the flood of tort litigation created by Rumain's tragic death: Chambers, A.R.'s conservatorship, and father McGee. Chambers sued the City of Phoenix in federal court in April 2015, asserting a Section 1983 claim on the estate's behalf, and wrongful death claims on behalf of the statutory beneficiaries: four children and two parents. *See* 42 U.S.C. § 1983; A.R.S. § 12-612.

**¶7** About two years later, in May 2017, the City of Phoenix reached a universal settlement, resolving all tort claims against it for $1,500,000, divided between the Section 1983 and wrongful death claims ($1,200,000), and the individual claims of those who witnessed Rumain's death ($300,000). The court approved the settlement, apportioning the wrongful death award between Rumain's three other children ($720,000), A.R. ($240,000) and father McGee ($20,000). Over Lattimer's objection, the court awarded $108,000 in attorney fees to Lattimer and Jenkins for their work on the wrongful death action. We affirmed in June 2020. *See In re Est. of Brisbon*, 1 CA-CV 19-0389, 2020 WL 3053614 (Ariz. App. June 9, 2020) (mem. decision).

**¶8** The probate court returned the question of Lattimer's fee for representing A.R.'s conservator to the conservatorship action. The probate court also reported Lattimer and Jenkins to the state bar (1) for a conflict of interest because they simultaneously represented the estate, A.R.'s conservatorship and father McGee, and (2) because their fee agreements were unclear about the scope of representation, Chambers' role, and the expenses.

**¶9** The state bar investigated and opened disciplinary proceedings against Lattimer, which he settled. Lattimer accepted an admonition by consent for violating E.R. 1.5(b) and (c) because he did not communicate with the clients about the possible costs and expenses

associated with litigation. The state bar, in exchange, dismissed the conflict-of-interest charges under ER 1.7 and 1.8.

¶10        A year after conceding that ethical misstep, Lattimer asked the court in A.R.'s conservatorship action to award him $50,000. Jenkins had withdrawn by this time and, given the disciplinary proceedings, he did not believe he was entitled to these fees. The court denied Lattimer's petition. He timely appealed. We have jurisdiction. *See* A.R.S. § 12-1201.21(A)(1), -2101(A)(1).

## DISCUSSION

¶11        We review the superior court's denial of attorney fees for an abuse of discretion, *In re Guardianship of Sleeth*, 226 Ariz. 171, 174, ¶ 12 (App. 2010), and will affirm the decision if reasonable, *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) (citation omitted).

¶12        All compensation paid by a conservatorship to counsel must be reasonable and necessary. A.R.S. § 14-5109(C). "To determine the reasonableness and necessity of compensation, the court must consider the best interest of the ward or protected person." *Id.* Arizona law lists six factors to consider: (1) whether the work benefitted the ward, (2) customary fees for similar work, (3) the conservatorship's assets, (4) whether the services were reasonable, efficient and cost-effective, (5) whether delegation was appropriate and prudent, and (6) any other factors on reasonableness. *Id.* A probate court has "discretion to determine a reasonable fee on a case by case" basis. *See In re Conservatorship of Fallers*, 181 Ariz. 227, 229 (App. 1994).

¶13        The superior court had ample evidence to deny Lattimer's request for attorney fees based on his ethical violations. *See In re Est. of Shano*, 177 Ariz. 550, 558 (App. 1993) (a court may deny a fee request if attorney violates his ethical duties). Lattimer admitted he violated E.R. 1.5(b) and (c). The court also had ample evidence of a conflict of interest. Lattimer emphasizes his settlement with the state bar, but he misses the point. State bar discipline is not required for courts to enforce ethical rules. *In re Martinez*, 248 Ariz. 458, 469, ¶ 41 (2020). Whatever the disposition of the bar's disciplinary charges, the record had ample evidence of ethical conflicts:

- As the personal representative of Rumain's estate, Chambers and her attorney owed a duty of impartiality to the estate's successors. *See In re Est. of Fogleman*, 197 Ariz. 252, 257, ¶¶ 10-11 (App. 2000). As the conservator of A.R.'s conservatorship, Chambers and her attorney

owed a conflicting fiduciary duty to A.R. *See Sleeth*, 226 Ariz. at 179, ¶ 36.

- Lattimer represented two statutory beneficiaries in the wrongful death lawsuit, A.R. and father McGee, whose recovery would be taken from the same pool of settlement money. McGee's recovery thus reduced A.R.'s recovery.

- The estate recovered damages under the Section 1983 claim, while A.R. recovered damages under to the wrongful death claim. The more the estate received from the settlement, the less A.R. could receive as a wrongful death beneficiary. A.R. is not guaranteed a devise from the estate, so the estate's victory was A.R.'s loss.

¶14        This was more than enough for the court to deny Lattimer's fee petition. *See Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) ("A court has broad equitable power to deny attorneys' fees . . . when an attorney represents clients with conflicting interests."). The court did not abuse its discretion.

## CONCLUSION

¶15        We affirm.

¶16        A.R.'s guardian ad litem ("GAL") requests attorney fees on appeal. We deny the request because ARCAP 21 provides no independent basis for attorney fees, and the GAL provides no other authorities. *See Neal v. Brown*, 219 Ariz. 14, 20, ¶ 22 (App. 2008). As the prevailing party, however, the GAL is awarded her costs on appeal, contingent upon her compliance with ARCAP 21(a). *See* A.R.S. § 12–341.

