`
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Guardianship of:

RAFAEL BARRERA HERRERA aka
RAFAEL HERRERA BARRERA,

an Adult.

No. 1 CA-CV 25-0224 PB

FILED 11-28-2025

Appeal from the Superior Court in Yuma County
No. S1400GC202300069
The Honorable Mark W. Reeves, Judge

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Walsma & Rodriguez PC, Yuma
By Pamela Walsma, Araceli Rodriguez
*Counsel for Petitioner/Appellant*

Schneider & Onofry PC, Yuma
By Jeanne Vatterott-Gale
*Co-counsel for Respondent/Appellee*

Murphy Law Firm Inc, Phoenix
By Thomas J. Murphy
*Co-counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

---

**J A C O B S**, Judge:

¶1 This appeal arises from a guardianship dispute in Yuma County concerning Rafael Herrera, whose daughter, Claudia Herrera, and wife, Ana Herrera, disagreed over his care and living arrangements. Claudia appeals a February 3, 2025 order awarding Ana attorneys' fees, costs, and other monetary relief. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

### A.  Initial Guardianship and Removal to Phoenix

¶2 On March 17, 2023, Claudia filed a no-notice emergency petition in the Yuma County Superior Court seeking appointment as Rafael's temporary guardian and his removal to her Phoenix home. Claudia filed her petition while Ana, Rafael's wife of over twenty-four years, was visiting family in Georgia. The superior court granted Claudia temporary guardianship ex parte that same day and set a hearing for April 3, 2023.

¶3 At the April 3 hearing, the superior court found no emergency existed and issued an order terminating Claudia's temporary guardianship. On April 17, 2023, the superior court entered an order directing Claudia to return Rafael to his Yuma assisted living facility by April 21, 2023, and denying her request to transfer venue to Maricopa County.

### B.  Claudia Moves to Stay and Appeals the Orders Terminating Her Guardianship and Requiring Her to Return Rafael.

¶4 On April 20, 2023, Claudia filed a motion to stay enforcement of the April 3 and 17 orders. The superior court never ruled on the motion. The same day, Claudia appealed the April 3 and 17 orders. In October 2023, Claudia moved this Court to stay execution of the April 17 order. This Court denied the motion in part because "the request for a stay of the order from which this appeal is taken must first be addressed by the trial court, see Ariz. R. Civ. App. P. 7(c) . . ." which had not occurred.

**¶5**        On March 8, 2024, this Court affirmed the April 2023 orders. *See In re Guardianship of Rafael Herrera Claudia C. Herrera v. Herrera,* No. 2 CA-CV 2023-0107, 2024 WL 1007235, at *1 ¶1 (Ariz. App. Mar. 8, 2024). It affirmed the superior court's orders dissolving Claudia's temporary guardianship, recognizing Ana's healthcare authority over Rafael, and directing that Rafael be returned to the Yuma assisted living facility. *Id.* at *3-*4 ¶¶ 13, 16-19. This Court declined to treat the denial of Claudia's motion to change the venue as appealable. *Id.* at *3 ¶¶ 14–15. While Ana was awarded her taxable costs as the successful party under A.R.S. § 12-341, this Court denied her request for attorneys' fees because she cited no substantive basis under ARCAP 21. *Id.* at *4 ¶ 20.

### C.    Order to Show Cause and Order of Protection Proceedings

**¶6**        On April 12, 2024, Ana filed an amended application for an order to show cause ("OSC") in the Yuma County Superior Court alleging Claudia had willfully failed to comply with the superior court's April 2023 orders for more than a year. The court set the OSC hearing for May 13, 2024, and required Claudia to attend in person.

**¶7**        On September 27, 2023, while the guardianship dispute remained pending in Yuma, Claudia obtained an order of protection in Maricopa County against Ana for herself and Rafael after Ana came to Claudia's home in Phoenix four days earlier. The order barred Ana from contacting either Claudia or Rafael. Ana was served with the order of protection outside the Yuma courtroom before the May 13, 2024 OSC hearing. The superior court in Yuma learned of the order of protection during the hearing and expressed uncertainty about its authority to direct Rafael's return to Yuma, given the order of protection. On June 11, 2024, the superior court in Maricopa County upheld the order of protection as to Claudia, finding Ana had committed criminal trespass, but dismissed it as to Rafael on June 14, 2024 because Ana is his spouse.

**¶8**        After the superior court in Maricopa County narrowed the order of protection, the superior court in Yuma County conducted several hearings. On August 13, 2024, Claudia returned Rafael to Ana at the court and withdrew her guardianship petition, citing the toll the litigation had taken on her and her family's mental and financial health. The court appointed Ana as a temporary co-guardian along with other family members. On September 18, 2024, Ana moved for sanctions against Claudia for failing to: comply with the April 2023 court orders; turn over all of Rafael's personal property; and promptly provide disclosure of all financial transactions using Rafael's income. During these hearings, the

court heard testimony concerning Rafael's well-being, Claudia's noncompliance with the April 2023 orders, her handling of Rafael's financial accounts, and expenses Ana and her family members claimed to have incurred as a result.

> ### D. The Court Sanctions Claudia for Failing to Return Rafael from April 2023 Until August 2024 Despite Its Orders, and for Some of Her Uses of His Funds.

**¶9** On February 3, 2025, the court entered an eighteen-page order imposing sanctions against Claudia, and awarding Ana sanctions, attorneys' fees, and costs totaling approximately $46,000. The court found Claudia had willfully and repeatedly refused to return Rafael to Yuma from April 2023 until August 2024 despite its April 2023 orders, and improperly redirected portions of Rafael's pension into Claudia's control, using some of those funds to pay Rafael's legal expenses incurred as Claudia litigated Rafael's guardianship against Ana.

**¶10** The court ordered Claudia to: (1) disgorge $8,271.92 taken from Rafael's pension to Rafael and Ana; (2) pay Ana $8,504.56 as reimbursement to Ana and Rafael's marital estate for fees paid to Rafael's counsel; (3) reimburse Ana and two other family members the total of $3,874 for travel and related expenses incurred to visit Rafael; (4) reimburse Ana and Rafael's marital estate for $13,000 paid to Rafael's counsel, if those were Rafael's funds; (5) reimburse Ana and Rafael's marital estate $4,445.69 plus interest for attorneys' fees and costs incurred in defending against the order of protection; (6) reimburse Ana $9,162.44 plus interest for attorneys' fees and costs from the OSC hearings; and (7) reimburse Ana $11,152 plus interest for attorneys' fees for the appeal.

**¶11** Claudia timely appealed. We have jurisdiction. A.R.S. §§ 12-2101(A)(1), (A)(9); Ariz. Const. art. 6, § 9.

## DISCUSSION

**¶12** We review a trial court's sanction order and award of attorneys' fees for abuse of discretion. *Ferneau v. Wilder*, 256 Ariz. 68, 75 ¶ 21 (App. 2023); *In re Guardianship of Sleeth*, 226 Ariz. 171, 174 ¶ 12 (App. 2010). The superior court abuses its discretion when its ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. City of Tucson*, 132 Ariz. 35, 37 (App. 1982). We review the interpretation of statutes *de novo*. *In re Sleeth*, 226 Ariz. at 174 ¶ 12.

**¶13**        Claudia challenges roughly $46,000 in reimbursements, costs, fees, and associated interest charges, arguing:  (1) Ana failed to defend several components of the superior court's sanction order on appeal; (2) the superior court could not award Ana appellate fees after this Court denied her request for those fees; and (3) the superior court improperly awarded restitution to Ana and Rafael's marital estate.  We consider each challenge in turn.

**I.        Ana Confessed Error By Failing to Defend Against Two of Claudia's Challenges to the Sanction Order in this Court.**

**¶14**        An appellee's answering brief must contain supporting reasons for arguments made, with citations to legal authority and appropriate references to the record.  ARCAP 13(a)(7), (b)(1).  We have consistently held that failure to respond to a debatable issue constitutes a confession of error.  *See Chalpin v. Snyder*, 220 Ariz. 413, 423 ¶ 40 n.7 (App. 2008) ("Failure to respond in an answering brief to a debatable issue constitutes confession of error.") (citing *Hecla Min. Co. v. Indus. Comm'n*, 119 Ariz. 313, 314 (App. 1978)).  Because Ana's Answering Brief does not respond to two of Claudia's principal challenges to the sanction order, we reverse the portions of the sanction order Ana did not defend.  *See id.*; *Hecla*, 119 Ariz. at 314.

**¶15**        *First*, Ana does not contest Claudia's argument that any attorneys' fees or costs associated with the Maricopa County protective-order proceeding had to be sought in that action under Arizona Rule of Protective Order Procedure 39, and were thus not properly before the superior court in Yuma County.  We thus vacate the superior court's order that Claudia reimburse Ana for $4,445.69 in fees incurred in the protective order proceeding.

**¶16**        *Second*, Ana provides no explanation, statutory basis, or record citations supporting the travel and cost reimbursements awarded to her and to non-party family members.  We thus vacate the findings in Paragraphs 32, 33, 34, and 35 addressing travel and visitation reimbursements, which awarded Ana and her relatives expenses incurred traveling to visit Rafael.  And we reverse the associated orders reimbursing Ana and her relatives for travel and visitation expenses totaling $3,875, which consist of the $850 awarded in Paragraph 39, $1,675 and $850 awarded in Paragraph 43, and two awards of $250 in Paragraph 45.

**II. The Superior Court Erred By Awarding Ana Appellate Attorneys' Fees the Court of Appeals Previously Denied.**

**¶17** Claudia argues that the court erred by awarding Ana $11,152 in attorneys' fees that this Court denied in deciding Claudia's appeal, citing *Tovrea v. Superior Ct.*, 101 Ariz. 295 (1966), and *Scates v. Arizona Corp. Comm'n*, 124 Ariz. 73 (1979). Ana contends the superior court retained the authority to make the award. Claudia is correct.

**¶18** In *Tovrea*, our supreme court held "the trial court is absolutely bound by the decision and mandate of an appellate court and that it is not within the jurisdiction of the trial court to review the appellate court's determination." 101 Ariz. at 297. Our supreme court reaffirmed that principle in *Scates*, explaining that once an appellate court has ruled upon an issue and issued its mandate, the trial court is bound to comply and lacks jurisdiction to take any action inconsistent with the appellate decision. 124 Ariz. at 75.

**¶19** This Court already considered and denied Ana's request for attorneys' fees in Claudia's appeal under ARCAP 21. *In re Herrera*, 2024 WL 1007235, at *4 ¶ 20. Thus, under *Tovrea* and *Scates*, that decision is final and cannot be revisited by the superior court. Ana argues that "[b]y February 2025, Appellant's motivations were more obvious to [the superior court] than they were to the Court of Appeals or the court that heard the order of protection." Perhaps so, but *Tovrea* and *Scates* made this Court's resolution the final one. *See Tovrea*, 101 Ariz. at 297; *Scates*, 124 Ariz. at 75. Accordingly, we vacate the superior court's award of $11,152 in appellate attorneys' fees and related interest in Paragraph 44.

**III. The Superior Court Did Not Err By Requiring Claudia Under A.R.S. § 14-1105(B) to Disgorge to Rafael, a Protected Person, Monies of His Claudia Spent, Even Nominally, on His Own Behalf.**

**¶20** Claudia argues that the superior court erred by requiring her to repay $8,271.92 of Rafael's pension funds despite uncontroverted evidence those funds were used for Rafael's medical care, household furnishings, and legal expenses. Claudia likewise argues that the superior court erred by requiring her to reimburse Rafael (jointly with Ana as his spouse and caretaker) for $8,504.56 of Rafael's counsel's fees and to reimburse Ana and Rafael's marital estate for $13,000 paid to Rafael's counsel if those were Rafael's funds. Ana argues that under A.R.S. § 14-1105(B), the superior court was authorized to require Claudia to reimburse all of these sums. Ana is right.

¶21 Under A.R.S. § 14-1105(B), a probate court may require a "person who engaged in the [unreasonable] conduct . . . to pay the ward or protected person for some or all of the fees and expenses as the court deems just under the circumstances." A.R.S. § 14-1105(B). The statute allows the court to restore funds to the protected person's estate when another party's actions have unnecessarily increased costs. Here, the superior court found that Claudia's repeated refusal to return Rafael to Yuma for over a year, her efforts to move him without authorization and to use the court's powers for her own benefit, her delay of proceedings under the belief she was "saving Rafael's life," and her assertion of de facto guardianship despite express orders to the contrary, collectively prolonged the litigation and caused Rafael's estate to incur substantial legal expenses. The court further found that Claudia misused Rafael's funds to pay legal fees without authority, took unreasonable litigation positions, and exploited a vulnerable adult through all of her withdrawals, given that she undertook a duty to care for Rafael. Accordingly, the superior court acted within its discretion under § 14-1105(B) in ordering Claudia to reimburse the protected person's estate for $8,271.92 in pension withdrawals, $8,504.56 in unnecessary professional expenses that her conduct caused, and $13,000 of Rafael's counsel fees, if those funds were, in fact, Rafael's.

## IV. The Superior Court Did Not Err Under A.R.S. § 14-1105(C) By Requiring Claudia to Reimburse Ana $9,162.44 of Attorneys' Fees and Interest for the Order to Show Cause Proceedings.

¶22 Claudia argues the superior court erred by awarding Ana $9,162.44 in attorneys' fees for the OSC proceedings, contending that the court lacked authority to compensate Ana personally for litigation expenses. Ana suggests that the superior court's award of $9,162.44 in attorneys' fees and interest was proper under A.R.S. § 14-1105. We agree with Ana.

¶23 A court may impose remedies in addition to those available under A.R.S. § 14-1105(B) "to mitigate the financial burden on a ward . . . or representative." A.R.S. § 14-1105(C). Here, Claudia's repeated defiance of the April 2023 orders and her unilateral retention of Rafael, a protected person, required Ana, as Rafael's spouse and healthcare power of attorney, to initiate the OSC proceedings to restore his care and living arrangements. The superior court found these proceedings were required solely because of Claudia's unreasonable conduct and that Ana's legal expenses were incurred on behalf of the protected person, not for her own benefit. Because the award properly mitigated expenses attributable to unjustified proceedings under § 14-1105(C), the court's ruling was within its statutory

authority.  Because it was, we need not reach whether it was also justified under the court's inherent authority.

## CONCLUSION

**¶24**         We affirm the superior court's award to Ana of $9,162.44 and to Rafael individually or jointly with Ana as described in Paragraph 21, *supra*, of $29,776.48.  We reverse the superior court's remaining awards. While both parties request their attorneys' fees incurred in this appeal, neither party cites any substantive provision of law entitling them to fees. We therefore deny both requests.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR